## HOOPER *v.* ROBINSON.

1. A policy upon a cargo in the name of A., " on account of whom it may concern," or with other equivalent terms, will inure to the interest of the party for whom it was intended by A., provided he at the time of effecting the insurance had the requisite authority from such party, or the latter subsequently adopted it.
2. No proof is necessary that the assured had an insurable interest at that time. It is sufficient if such interest subsisted during the risk and when the loss occurred.
3. A policy " lost or not lost " is a valid stipulation for indemnity against past as well as future losses. A contingent interest may be the subject of such a policy.
4. In an action against A. to recover the amount paid to him by the underwriters, who allege that neither he nor his principal had an insurable interest in such cargo, the burden of proof is on the plaintiffs to show that fact.
5. A. having received the money as agent, and promptly paid it over to his principal, without notice of any adverse claim, or reason to suspect it, the plaintiffs, having been guilty of laches, must look to that principal.

ERROR to the Circuit Court of the United States for the District of Maryland.

The British steamer " Carolina " came to Baltimore, consigned to James Hooper & Co. They were also her agents while she remained in that port. The plaintiff in error was a member of the firm. Having taken on board her return cargo, the steamer proceeded on her homeward voyage. While in the Chesapeake Bay she was injured by a collision with another vessel, and put back to Baltimore for repairs. She was repaired, and Hooper & Co. paid all the bills and made other disbursements for her. McGarr, the captain, drew on Good

Brothers & Co., of Hull, England, for the amount in favor of Hooper & Co., and at the same time directed them to protect the drawees by insurance, which was intended to be done by the policy here in question. The draft bore date Oct. 20, 1872 ; was for £1,611 18s. 7d. ; was payable in London thirty days after sight ; and directed that the amount should be charged " to account for advances for repairs and disbursements of steamship ' Carolina ' and her freight, to enable the ship to proceed on her voyage."

The policy of insurance was dated on the 26th of October, 1872, and was to " James Hooper & Co., on account of whom it may concern, in case of loss to be paid to their order." The insurance was " lost or not lost," . . . " on merchandise, to cover such risks as are approved and indorsed on the policy." The indorsement set forth the date of the insurance, the name of the vessel, the course of the voyage, the rate of the premium, the amount insured ($8,000), and the remark, " paid advance to cover disbursements and repairs." The names of the agents of the underwriters were affixed. The instrument was a cargo policy. No inquiry was made of Hooper as to whom he was insuring for, and no representation was made by him except as is disclosed in the memorandum indorsed upon the policy. The draft of McGarr was bought by Brown & Sons, bankers, of Baltimore. They transmitted it to their correspondents in London. On the 11th of November, 1872, it was accepted by Good Brothers & Co., and on the 14th of December following they paid it. On the 14th of November, 1872, the steamer foundered at sea. On the 28th of that month notice of the loss was given to the underwriters. On the 6th of December, in answer to a call for proof of loss and interest, Hooper & Co. furnished the Baltimore agent of the underwriters with the protest and a full account of the items of " outfit and disbursements of the British steamer ' Carolina.' " In the statement was the charge, " to cash paid insurance on advances $117.33." On the 15th of January, 1873, the agent in Baltimore drew on the defendants in error, his principals in New York, for $8,012, at five days' sight. The draft was paid on the 24th of that month, and on the 31st Hooper & Co. remitted the amount to Good Brothers & Co. in England. When Hooper & Co. received

the draft of the 15th of January, they gave a receipt setting forth that when the draft was paid it would be " in full for claim for total loss of advancements for disbursements and repairs per steamer ' Carolina,' " . . . " insured 26th of October, 1872, under policy No. 22,706." The receipt concluded with a promise, upon the payment of the draft, " to assign all our right, title, and interest in the above advances for disbursements and repairs to the underwriters." Hooper said at the time to the agent " that he had nothing to assign." On the 10th of February, 1873, Hooper & Co. executed to Robinson & Cox, the attorneys of the underwriters, the promised assignment, which was a printed form filled up by the agent, " such as is taken in all cases of abandonment for total loss." Hooper then again told the agent " that he had no interest in the matter, but as it was customary, he would sign the paper."

During all these transactions Hooper & Co. were not asked whether they had insured for themselves or for others ; whether they had been or expected to be repaid their disbursements ; whether any one else was interested in the policy, or for whom they were collecting the insurance. More than a month after the loss had been paid and the money remitted to England, a marine adjuster came from New York to Baltimore " to ascertain who owed Mr. Hooper for advances." A full disclosure was thereupon made by Hooper. The adjuster suggested to him " to write his friends on the other side to return the money." Hooper asked if the underwriters did not get the premium for insurance, and if the vessel was not lost. Being answered in the affirmative, he said he " would not have the face to write to the parties to return the money." No offer has been made to return to Hooper & Co., or to Good Brothers & Co., the premium for insurance. This suit was brought by the underwriters on the 30th of October, 1873, more than nine months after the loss had been paid and the money remitted to Good Brothers & Co., and more than seven months after Hooper's disclosure to the adjuster.

When the testimony was closed on both sides in the court below, the defendant, Hooper, asked the court to charge the jury, in effect, that if they believed the advances and the insurance were made ; that the draft on Good Brothers & Co. was

drawn, accepted, and paid; that the steamer was lost; proof of loss and payment demanded; that Hooper then furnished the plaintiffs with the account of his disbursements; that the plaintiffs thereupon paid him and took the assignment without having made any inquiry as to whether he was collecting for himself or for others, and that within a few days thereafter he remitted the money to Good Brothers & Co., — all as stated in the evidence, the plaintiffs were not entitled to recover. This instruction the court refused to give, and instructed, in substance, that if the jury believed that when Hooper made his claim for indemnity under the policy he produced the account and subsequently gave the receipt and executed the assignment, and that when he received payment and delivered the assignment he had received notice of the payment of the draft upon Good Brothers & Co., given to him to recover his advances, which fact he did not communicate to the underwriters, then the plaintiffs were entitled to recover the amount of the insurance money which he had received. Hooper excepted to the refusal to instruct and to the instruction given. The jury found for the plaintiffs, and judgment was entered accordingly. The defendant then brought the case here for review.

*Mr. Thomas W. Hall* for the plaintiff in error.

That advances to cover disbursements and repairs constitute an insurable interest is settled. *Insurance Company* v. *Barings*, 20 Wall. 163, and cases cited.

The present is a stronger one than that case, for neither Hooper, who effected the insurance and to whose order the loss was made payable, nor Good Brothers & Co., for whom it was effected, are suing to recover upon the policy.

If they had an insurable interest in the advances, even " an inchoate and contingent " one, there can be no doubt that it was covered by the policy " on account of whom it may concern."

It is essential to the case of the plaintiffs that they show affirmatively that Good Brothers & Co., to whom Hooper paid over the money as soon as collected, were not entitled to receive it. There is, however, no evidence in the record to support any such view. It is merely an assumption, which the plaintiffs did not attempt to maintain by proof at the trial.

For whom a policy " on account of whom it may concern" is underwritten, is a question of intention on the part of the person procuring it. It is sufficient that it was intended to indemnify any party having an insurable interest, and it will be applied to that of any person subsequently ascertained to have such an interest who adopts the insurance.

It is immaterial whether the person intended to be protected, therefore, authorizes the insurance beforehand or subsequently adopts it. 1 Phillips, Ins. (5th ed.), sects. 383–385; *Buck & Hedrick* v. *Chesapeake Insurance Co.*, 1 Pet. 151; *Insurance Company* v. *Chase*, 5 Wall. 509; *Newsoms' Adm'r* v. *Douglas*, 7 Har. & J. (Md.) 451; *Maryland Insurance Co.* v. *Bathurst*, 5 Gill & J. (Md.) 229; *Franklin Fire Insurance Co.* v. *Coates, &c.*, 14 id. 285; *Routh* v. *Thompson*, 13 East, 285; *Bridge* v. *Niagara Insurance Co.*, 1 Hall (N. Y.), 347; *Blanchard* v. *Waite*, 28 Me. 59; 3 Kent, Com. 260. So the interest covered may itself be inchoate and contingent. *Lucena* v. *Craufurd et al.*, 3 Bos. & Pul. 75; *Hancock* v. *Fishing Insurance Company*, 3 Sumn. 132.

That Good Brothers & Co. were the parties whose interest was intended to be insured and protected is clear. They ratified in the fullest manner all that had been done by Hooper and the master of the vessel for their protection. It is a case for the application of the maxim, *Omnis ratihabitio retrotrahitur et mandato priori æquiparatur*. *Lucena* v. *Craufurd et al.*, *supra*; *Hancock* v. *Fishing Insurance Company*, *supra*; *Lee* v. *Massachusetts Fire & Marine Insurance Co.*, 6 Mass. 208; 3 Kent, Com. 262.

The court erred in assuming as a conclusion of law that Hooper's omission to communicate to the underwriters, " when he received payment of said insurance, and made and executed said assignment, that he had already received notice of the payment of the draft " (if the jury should find these facts), entitled the plaintiffs below to recover in this action. He was under no obligation, legal or moral, to disclose the fact that he was insuring for Good Brothers & Co., when he took out the policy, or that he was receiving for them the money, which by the terms of the policy was payable to him.

Silence is not concealment, unless disclosure be a duty.

*Aliud est celare; aliud tacere. Carter* v. *Boehm*, 3 Burr. 1905 : 1 Smith, Lead. Cas. (7th Am. ed.), 834, and notes to leading case; 2 Parsons, Contracts, 363, and cases cited; *Russell* v. *Union Insurance Co.*, 1 Wash. 409; *Finney* v. *Warren Insurance Co.*, 1 Metc. (Mass.) 166; *Higginson*, v. *Dall* 13 Mass. 96; *Wells* v. *Philadelphia Insurance Co.*, 9 Serg. & R. (Pa.) 103.

In any aspect of the case the court erred in its instruction in withholding from the jury the question of the materiality of Hooper's alleged omission to inform the defendants in error that the master's draft had been paid. Materiality in such cases is always a question for the jury, even when the fact the improper concealment of which is alleged is one which might and reasonably would have influenced the action of the underwriters in entering into the contract, in accepting or rejecting the risk, or in fixing the amount of the premium. *Livingston* v. *Maryland Insurance Co.*, 6 Cranch, 274; *Maryland Insurance Co.* v. *Ruden's Adm'r*, id. 338; *McLanahan* v. *Universal Insurance Co.*, 1 Pet. 170; *Columbian Insurance Co.* v. *Lawrence*, 10 id. 516; *New York Firemen's Insurance Co.* v. *Walden*, 12 Johns. (N. Y.) 513; *Franklin Insurance Co.* v. *Coates*, 14 Md. 299; *Carter* v. *Boehm, supra;* 1 Smith, Lead. Cas. (7th Am. ed.), pp. 848, 850, notes to *Carter* v. *Boehm;* 3 Kent, Com. 284, 285.

Viewed, as this action must be, as an ordinary one to recover back money paid under an alleged mistake of facts, the right of the plaintiffs to recover must be determined by the equities of the case and the rules ordinarily applicable to such actions. They will not be permitted to recover if it would be manifestly inequitable to allow them to do so. *Moses* v. *Macfarlane*, 2 Burr. 109; *Insurance Company* v. *Chase*, 5 Wall. 509; 2 Smith, Lead. Cas. (7th Am. ed.) 402, notes to *Marriott* v. *Hampton*.

The plaintiffs are suing to recover back from Hooper money which they paid him without inquiry, and which he, in perfect good faith, paid over to the persons for whom he had collected it, and who, he supposed, were entitled to receive it, long before suit brought, or any notice of any claim or demand on the part of the plaintiffs to have the money refunded.

There is no equity in the claim thus set up. They chose voluntarily, with the fullest opportunity for inquiry, to pay the money without inquiry to a person who received it innocently, and with no fraudulent intention at once paid it over to the parties to whom he believed it to belong. *Elliott* v. *Swartwout,* 10 Pet. 137 ; *Buller* v. *Harrison,* 2 Cowp. 565 ; *Carter* v. *Boehm,* 3 Burr. 1905 ; *Milnes* v. *Duncan,* 6 Barn. & C. 671 ; *Cox* v. *Masterson,* 9 id. 902 ; *Townsend* v. *Crowdy,* 8 C. B. N. S. 477 ; *Clarke* v. *Dickson,* El., B. & E. 148.

*Mr. Stewart Brown* and *Mr. Arthur George Brown, contra.*

The instruction granted by the court below was correct. *Carpenter* v. *Providence Washington Insurance Co.,* 16 Pet. 495 ; *Insurance Company* v. *Barings,* 20 Wall. 159 ; *Insurance Company* v. *Newton,* 22 id. 32 ; *Home Insurance Co.* v. *Baltimore Warehouse Co.,* 93 U. S. 527 ; *Hidden* v. *Slater Insurance Co.,* 2 Cliff. 269 ; *Allegre* v. *Maryland Insurance Co.,* 6 Har. & J. (Md.) 408 ; Angell, Insurance, sect. 59 ; 2 Parsons, Mar. Ins., p. 474.

The underwriters were entitled to the best evidence that Hooper possessed, "so that they might be able to form some estimate of their rights and duties before they were obliged to pay." *Columbia Insurance Co.* v. *Lawrence,* 10 Pet. 507 ; *Lawrence* v. *Ocean Insurance Co.,* 11 Johns. (N. Y.) 259 ; 1 Parsons, Mar. Ins. 468, 469 ; *Smith* v. *Columbia Insurance Co.,* 17 Pa. St. 253.

Having been, by Hooper's concealment and deceit, induced to pay him $8,000, the underwriters were entitled, after discovery of the real facts, to recover that sum in this action. 2 Parsons, Mar. Ins. 489, 490, and the authorities cited and fully referred to in the notes.

By the abandonment accepted by the underwriters they were put completely in the place of the assured, and were entitled to, and had the right to understand and assume that they thereby acquired and were subrogated to, all the rights which Hooper possessed at the time of the loss, including his right to demand repayment of the "advances" which had been made by him. *Chesapeake Insurance Co.* v. *Stark,* 6 Cranch, 268 ; *Hart* v. *Western Railroad,* 13 Metc. (Mass.) 99 ; 1 Parsons, Mar. Ins. 229 ; 2 id. 492, 494 ; 2 Phillips, Ins., sects. 1511, 2123, 2162 ;

2 Am. Lead. Cas. 835; *Hall & Long* v. *Railroad Companies*, 13 Wall. 367; *The Falcon*, 19 id. 75; *Atlantic Insurance Co.* v. *Storrow*, 5 Paige (N. Y.), Ch. 285, 294; *Ætna Insurance Co.* v. *Tyler*, 16 Wend. (N. Y.) 385.

The phrase, " on account of whom it may concern," protects only persons who had an insurable interest at the date of the policy, and at the time of loss. 1 Parsons, Mar. Ins. 46, and the authorities cited in note 1, p. 46; 1 Phillips, Ins., sect. 387; *Rider* v. *Ocean Insurance Co.*, 20 Pick. (Mass.) 259; *Garrell* v. *Hanna*, 5 Har. & J. (Md.) 412; 2 Am. Lead. Cas. (5th ed.) 806. Therefore Good Brothers & Co., the drawees of the bill of exchange, had no insurable interest, and no " concern " with the policy.

When the policy was taken out, there is not the slightest evidence that Good Brothers & Co. had authorized the master to draw on them, or knew that he intended to do so, or were under any obligation to accept or pay the bill; and when the loss occurred, they had not paid the bill of exchange which had been drawn. They had therefore no insurable interest either at the date of the policy or of the loss; and the court properly ignored Hooper's testimony as to the master's orders to protect them, and rejected the defendant's prayer, which chiefly relied upon that testimony.

Defendant's prayer was also fatally defective, by reason of the fact that it assumed that Hooper, by direction of Good. Brothers & Co., presented proofs of the loss, because there is no evidence of any such direction.

There is no evidence that either the master or Hooper was agent of Good Brothers & Co., or authorized to insure for them. The former was their friend, who, for some reason best known to himself, drew on them a bill of exchange in Hooper's favor. *Seamans* v. *Loring*, 1 Mas. 136. That bill Hooper took, holding on to his lien.

As regards Hooper, however, and his lien and " advances," that bill was conditional payment at the moment it was given, and when paid, Dec. 14, 1872, it became absolute payment, and destroyed the lien, and the advances which had been the subject-matter of insurance. *The Emily Souder*, 17 Wall. 666.

Indeed, his advances were, in fact, repaid to him in cash on the day he sold the bill of exchange to Brown & Sons, and thereafter his only risk was a possible liability as indorser. The indorsement and sale of that bill by Hooper to Brown & Sons was equivalent to an assignment to them of his claim to be repaid his advances, and as such it was a material fact which good faith required him to disclose when he applied to the underwriters to indemnify him for his pretended loss, and offered his proofs, and gave the receipt and assignment. Authorities *supra*, and 1 Parsons, Mar. Ins. 243 and note 4.

The contract of the underwriters was to pay on proof of interest and of loss. Hooper was therefore bound to show for whom and in what right he was collecting the money. This, having exclusive possession of the facts, he undertook and pretended to do, by proving, as if for himself, a loss which. he had not suffered, under an interest which had long since ceased to exist.

The underwriters have no concern with the disposition that Hooper chose to make of the money which he induced them to pay under this mistake of fact on their part, which was caused by his own concealments and false representations ; and they contend that the instruction of the court below was correct, and should on this ground alone be sustained.

MR. JUSTICE SWAYNE, after stating the facts, delivered the opinion of the court.

As the facts of which the instruction given was predicated were all indisputable and undisputed, that instruction was equivalent to a direction to find for the plaintiffs. The same remarks apply *mutatis mutandis* to the instruction asked by the defendant. The case, then, resolves itself into this : Were the plaintiffs entitled to recover upon the case as presented in the record ?

A policy like the one here in question, in the name of a specified party, " on account of whom it may concern," or with other equivalent terms, will be applied to the interest of the persons for whom it was intended by the person who ordered it, provided the latter had the requisite authority from the

former, or they subsequently adopted it.    1 Phillips, Ins., sect. 383.

This is the result, though those so intended are not known to the broker who procures the policy, or to the underwriters who are bound by it.    Id., sect. 384.

One may become a party to an insurance effected in terms applicable to his interest, without previous authority from him, by adopting it either before or after the loss has taken place, though the loss may have happened before the insurance was made.    Id., sect. 388.

The adoption of the policy need not be in any particular form.    Any thing which clearly evinces such purpose is sufficient.

"It is now clearly established that an insurable interest, subsisting during the risk and at the time of loss, is sufficient, and that the assured need not also allege or prove that he was interested at the time of effecting the policy; indeed, it is every day's practice to effect insurance in which the allegation could not be made with any degree of truth; as, for instance, where goods are insured on a return voyage long before they are bought."    1 Perkin's Arnould, 238.

This is consistent with reason and justice, and is supported by analogies of the law in other cases.    We will name a few of them.

A deed voidable under certain circumstances may be made valid for all purposes by a sufficient after-consideration.    A devise to a charitable use may be made to a grantee not *in esse*, and vest and take effect when the grantee shall exist. The doctrine of springing and shifting uses is familiar to every real-property lawyer.    They always depend for their efficacy upon events occurring subsequently to the conveyance under which they arise.

Where the insurance is "lost or not lost," the thing insured may be irrecoverably lost when the contract is entered into, and yet the contract be valid.    It is a stipulation for indemnity against past as well as future losses, and the law upholds it.

Where a vessel insured for a stated time was sold and transferred, and was repurchased and transferred back within that time, it has been held that the insurance was suspended while

the title was out of the assured, "and was revived again on the reconveyance of the assured during the term specified in the policy." *Worthington* v. *Bearse and Others*, 12 Allen (Mass.), 382.

A right of property in a thing is not always indispensable to an insurable interest. Injury from its loss or benefit from its preservation to accrue to the assured may be sufficient, and a contingent interest thus arising may be made the subject of a policy. *Lucena* v. *Craufurd et al.*, 3 Bos. & Pul. 75 ; s. c. 5 id. 269 ; *Buck & Hedrick* v. *Chesapeake Insurance Co.*, 1 Pet. 151 ; *Hancock* v. *Fishing Insurance Company*, 3 Sumn. 132.

In the law of marine insurance, insurable interests are multiform and very numerous.

The agent, factor, bailee, carrier, trustee, consignee, mortgagee, and every other lien-holder, may insure to the extent of his own interest in that to which such interest relates ; and by the clause, " on account of whom it may concern," for all others to the extent of their respective interests, where there is previous authority or subsequent ratification.

Numerous as are the parties of the classes named, they are but a small portion of those who have the right to insure.

Where money is advanced, as in this case, for repairs and supplies to enable a vessel to proceed on her voyage, the lender has a lien, not on the cargo, but upon the vessel, and the amount of the debt may be protected by insurance upon the latter. *Insurance Company* v. *Barings*, 20 Wall. 163, and the authorities there cited. If the owner of a vessel, being also the owner of the cargo, or the owner of the cargo, not being the owner of the vessel, procures a third person to make such advances upon an agreement that he shall be repaid from the cargo, and a bill of lading is furnished to him, he has a lien on the cargo for the amount of his advances, and may insure accordingly. *Clark* v. *Mauran and Others*, 3 Paige (N. Y.), 373 ; *Dows* v. *Greene*, 24 N. Y. 638 ; *Holbrook* v. *Wight*, 24 Wend. (N. Y.) 169. The assignment of a bill of lading passes the legal title to the goods. *Chandler* v. *Belden*, 18 Johns. (N. Y.) 157. The assignment of a debt, *ipso facto*, carries with it a lien and all other securities held by the assignor for the discharge of such debt. *The Hull of a New Ship*, 2 Ware,

203; *Pattison* v. *Hull*, 9 Cow. (N. Y.) 747; *Langdon* v. *Buel*, 9 Wend. (N. Y.) 80.

Where a lien subsists either on the vessel or cargo, a third party may pay the debt, and, with the consent of the debtor and creditor, be substituted to all the rights of the latter. Dixon on Subrogation, 163; *Garrison et al.* v. *Memphis Insurance Co.*, 19 How. 312; *The Cabot*, 1 Abb. (U. S.) 150. Where there is neither an agreement nor an assignment, there can be no subrogation, unless there has been a compulsory payment by the party claiming to be substituted. *Sanford* v. *McLean*, 3 Paige (N. Y.), 117.

Recurring to the facts, there are two points upon which we deem it proper particularly to remark : —

*First*, We find no ground for any imputation of bad faith upon Hooper. We think there was no indirection and no purpose of concealment on his part. Before the insurance was effected, the underwriters had a clear right, if they so desired, to know for whom they were asked to insure. *Buck & Hedrick* v. *Chesapeake Insurance Co.*, *supra*. They made no inquiry. This excused Hooper from making any communication upon the subject. When the insurance money was paid, although the face of the policy and other facts, patent and notorious, which must have been known to the underwriters, showed clearly that the advances were made, and that the insurance was effected by Hooper, not for himself, but for others, the underwriters were again silent. The draft on Good Brothers & Co. had then been sold, and Hooper had received the money. Thereafter he had nothing at stake but the solvency of the drawees. When the adjuster, more than a month later, made the inquiry, which should have been made before, Hooper had paid over the money. He then made a frank and full disclosure. We see no reason to doubt that if the inquiry had been made earlier it would have been answered in the same way. In this respect the underwriters have themselves to blame rather than Hooper. The record discloses no ground upon which, *ex equo et bono*, he can be called upon to pay back the fund in controversy.

*Second*, It does not appear in the record to whom the vessel and cargo belonged. There is not a ray of light upon the subject. In that respect the case is left wholly in the dark.

The proof as to who were intended to be insured is that they were Good Brothers & Co., and no one else, though, according to the terms of the policy, payment in the event of loss was to be made to Hooper & Co. The former fact is established by the testimony of Hooper, and there is none other upon the subject. He is unimpeached, and his testimony is conclusive. The inquiry then arises, whether Good Brothers & Co. had any insurable interest in the cargo. It does not appear whether they had or had not. We have suggested several ways in which such an interest may have arisen, and have shown that under the policy in question it would have been sufficient if it had subsisted at any time before the loss was known to them. It may possibly have arisen in other modes. This brings us to the question of the burden of proof. Did it rest upon the plaintiffs or upon the defendant? In order to maintain the plaintiffs' case it was necessary to be made to appear that Good Brothers & Co., the assured, *had no insurable interest* in the cargo, the cargo being the thing insured. Upon both reason and authority, we think the *onus probandi* was upon the plaintiffs.

It was for them to make out their case. The premium had been paid, the loss had occurred, and the indemnity money had been received by the agents of the assured and paid over to their principals. The plaintiffs claim the right to go behind all this, and to reclaim from Hooper the fund thus received and parted with. It was incumbent upon them to establish every thing necessary to entitle them to recover, and they have no right to throw upon the defendant any part of the burden that belonged to themselves. For authorities upon this subject see 1 Greenl. Evid., sects. 34, 35, 80, 81, and the notes. Such is the legal result, notwithstanding the negative form of the averment, to be established.

But suppose the case were made out as against Good Brothers & Co., and that a recovery could be had if the action were against them, still it by no means follows that the plaintiff in error was liable.

There was laches on the part of the underwriters, or their agents, which is the same thing. Nothing in the record is clearer than that Hooper received the money as the agent of

the assured.    It was his duty immediately to advise his princi-
pals and promptly to pay them.    1 Waite, Actions and De-
fences, 252, 255.    This latter duty it appears he performed.    He
had then received no notice of the adverse claim subsequently
made, and had no reason to expect it.    His parting with the
money is proof of his sincerity and honesty.

Under all the circumstances, we think he is entitled to the
benefit of the principle which in such cases gives immunity to
the agent and refers the party complaining for satisfaction to
the principals who have received and hold the money.

There was error in the instruction given by the court to the
jury.

The counsel on neither side referred to the state of the
pleadings.    We have, therefore, not adverted to that subject,
but have considered the case as it was argued, — entirely upon
the merits.

The judgment of the Circuit Court will be reversed, and
the cause remanded for further proceedings in conformity to
this opinion ; and it is

*So ordered.*