BROWN *v.* MARDEN *& a.*

When selectmen are called upon to determine the amount of assistance furnished to a pauper within ninety days of an election, that he may refund the same in order to have his name inserted in the check-list, and they, acting in good faith, determine the amount to be greater than the sum actually expended, and receive the amount so determined and pay it into the town treasury, they are not liable to refund the excess, in an action brought by the person relieved.   *Ford* v. *Holden,* 39 N. H. 143, distinguished.

The right of the town to retain the money paid under such circumstances cannot be tried in a suit against the selectmen.

ASSUMPSIT, to recover $40 and interest received by the defendants, selectmen of New Boston, on the day of the annual election in March, 1880.   Facts found by a referee.

The plaintiff, who became of age February 19, 1880, his mother, and a minor brother, for three months and more before the annual meeting, occupied a small piece of real estate in New Boston, obtaining a considerable part of their living from the proceeds of the land.   The mother, as head of the family, managed its affairs. The sons worked away from home to some extent, and brought to the mother some money or its equivalent.   The plaintiff is below the average of men in point of intellect.   During the ninety days preceding town-meeting, the town, at the request of the mother, furnished to her, to be used in the family, necessaries to the amount

of $15. The plaintiff never called on the town for aid, but the aid which the mother received was demanded as much to meet his necessities as those of his brother or mother. He consumed one third of the necessaries furnished by the town during the ninety days—two thirds of it while he was a minor, and one third after he became of age. His position in the family was not changed by his becoming of age, he still needing the care of his mother.

Before the annual meeting the supervisors refused to put the plaintiff's name on the check-list, on the ground that he had been aided by the town within the time named in the statute. At the opening of town-meeting, while the chairman of the supervisors was presiding and votes were being received for moderator, the plaintiff appeared and claimed a right to vote. The chairman informed him that his name was not upon the list, for the reason that he had been aided by the town. The plaintiff then demanded the amount of such aid, and offered to pay it under protest. The defendants and one Cochrane, being present and acting as selectmen of the town, consulted together as to the amount of aid furnished, and the defendants decided that the amount was $40, and so reported to the supervisors. Cochrane dissented. The Brown family had been aided previous to the ninety days. The defendants at the trial claimed that at the time the ninety days began to run there were provisions on hand in the Brown house furnished by the town, and that they were justified in treating the plaintiff as a boarder, and that they found $40 as the amount to be paid by the plaintiff by estimating the cost of his board for ninety days. The plaintiff was not in funds, but his friends raised the $40, and it was paid to the defendants, and a receipt taken from them acknowledging the payment to them by Brown of $40 for assistance as a pauper from the town. The selectmen paid the money to the town treasurer before this suit was brought. The money was paid by Brown under protest that nothing ought to be paid, and if anything, only a small part of the $40. The plaintiff testified that it was not his money that was paid to the defendants. He, however, assented to all that was done to get his name on the check-list, and appeared before the referee and testified in support of this suit. No demand was made before suit brought. If on the foregoing facts the action can be maintained, the referee finds that if the plaintiff was not aided by the town in such manner as to prevent his voting, he is entitled to recover $40 and interest from the date of the writ; if he was so aided, then the referee finds that he recover $35 and interest from the date of the writ : otherwise, the referee finds for the defendants.

The court ordered judgment on the report for the defendants, and the plaintiff excepted.

*T. O. Knowlton,* for the plaintiff. 1. The circumstances and facts of the case show such compulsion, and the taking of an undue

advantage of the plaintiff's situation, as will enable him to recover this money, illegally demanded, and paid under protest. The parties were not upon an equal footing. The plaintiff had no opportunity to contest the claim made by the defendants. He had no opportunity to plead. He could have no day in court. The modern cases turn upon the question whether the payment was in fact voluntary. There is no pretence that the payment was voluntary in this case. *Richardson* v. *Duncan*, 3 N. H. 508; *Benson* v. *Monroe*, 7 Cush. 126; *Ford* v. *Holden*, 39 N. H. 143; *Thompson* v. *Thompson*, 5 W. Va. 190; *Lockwood* v. *Kelsea*, 41 N. H. 185; *Ripley* v. *Gelston*, 9 Johns. 201; *Clinton* v. *Strong*, 9 Johns. 370; *Hudson* v. *Robinson*, 4 M. & S. 475.

2. No demand was necessary. Having illegally obtained the plaintiff's money, it was their duty immediately to return it. A demand is necessary only where the party has obtained possession of property lawfully. Here there was an actual conversion. *Hyde* v. *Noble*, 13 N. H. 494; *Wentworth* v. *Gove*, 45 N. H. 160; *Whittier* v. *Whittier*, 31 N. H. 464; *Walcott* v. *Keith*, 22 N. H. 196; *Dudley* v. *Sawyer*, 41 N. H. 326; *Fisk* v. *Ewen*, 46 N. H. 173.

3. The plaintiff was not a pauper. He did not apply for aid. *Poplin* v. *Hawke*, 8 N. H. 305; *Jenness* v. *Emerson*, 15 N. H. 486.

4. The money paid was lent to the plaintiff, was paid for his use and benefit, and receipted for to him. *Winkley* v. *Foye*, 28 N. H. 513.

5. It is no answer that the defendants paid the money into the town treasury. If they had no right to demand it, they had no right to receive and dispose of it as the money of the town. Their act went beyond their official authority, and made them individually liable. Gen. Laws, c. 29, s. 7, refers to and means the money belonging to the town, and such as they had a right to receive in their official capacity for the town.

6. The action will lie. The equities are all with the plaintiff. The defendants' act was a fraud on the plaintiff.

*C. R. Morrison*, for the defendants. 1. The plaintiff was a pauper. He was a person standing in need of relief. It is immaterial that he made no personal application. The supplies were furnished at his mother's request to be used in the family, and as much to meet his necessities as those of his brother or mother. Hence, if an application were necessary, there was one by the head of the family. No application was necessary. A person, poor and unable to support himself, and standing in need of relief, by the express terms of the statute must be relieved. Where a family is manifestly in need of immediate assistance, it is the duty of the overseers to afford it, even if the head of the family refuses to receive it.

2. The liability to refund may well extend to the period within his minority. The time (ninety days) is very short, and a person

fit to vote should ordinarily be sufficiently mature at twenty years and nine months to take care of himself, or to refund what was expended within the last three months of his minority.

3. A portion of the supplies was furnished after he became of age, he still being in need of relief, and the amount is not material.

4. The defendants had no power over the check-list, which clearly distinguishes the case from *Ford* v. *Holden*, 39 N. H. 143, where a demand was proved: here the referee has found that no demand was made.

5. It is a well settled general rule, that no action will lie against a "mere collector or receiver, who has, *bona fide*, paid over the money before suit." 1 Chit. Pl. 37; *Sadler* v. *Evans*, 4 Burr. 1985; *Evans* v. *Atkins*, 4 T. R. 555; *Pond* v. *Underwood*, Ld. Raym. 1210; *Cary* v. *Webster*, 1 Str. 480. *Weeks* v. *Hill*, 38 N. H. 199, is a strong case in support of this rule. The money had not been actually paid over, yet it was held that an action would not lie against the town officer. And there are several cases which hold that although the money has not been paid over, the right of the principal shall not be tried in an action against a mere agent or officer, the money having been actually received for the principal. Pal. Ag. (Lloyd) 393; *Winkley* v. *Foye*, 28 N. H. 513, 519.

6. The money was expressly received and receipted for, as money of the town. It was paid over as money of the town, in pursuance of the statute, as those who furnished it were bound to know it would be.

7. No action could have been sustained against the town without a demand. This is clear. Nor could any action be sustained against the defendants, even if the money were in their hands, without a demand. It was received for a special purpose. It was received to be paid into the town treasury. If he would change their purpose and intercept it on its way to the town treasury, the least he could do would be to demand it, and he would have no right of action until a demand. *Sawyer* v. *Tappan*, 14 N. H. 352; *Grafton Bank* v. *White*, 17 N. H. 389, 392; *Moody* v. *Mahurin*, 4 N. H. 296; *Hutchins* v. *Gilman*, 9 N. H. 359; *Douglas* v. *Elkins*, 28 N. H. 26.

8. Here there was no demand, and the money was actually paid over. Saying that he paid the money under protest was not demanding it back; nor was it notice not to pay it over. A demand in the same breath with the payment, or a notice as a part of the same transaction not to pay it over, would render the payment nugatory. He could not pay, and refuse to pay, by the same act. The protest was sufficient to prevent its being treated as a voluntary payment, perhaps, and lay the foundation for a subsequent demand and suit, but beyond this it had no effect whatever.

9. The defendants were obliged to act. In fact, the plaintiff compelled them to decide how much he was owing the town.

They may have misjudged by acting upon an erroneous principle. There is no finding of fraud, and good faith on their part in the absence of any such finding must be presumed.

SMITH, J.   It was no part of the defendants' duty to regulate the check-list.   They had no power to place the plaintiff's name upon it, or to prevent its being entered.   The sole duty of regulating the list was devolved by statute upon the supervisors of the town.   G. L., c. 30.   The supervisors properly refused to put the plaintiff's name in the list, for the reason that he had received assistance from the town within the preceding ninety days.   But this disqualification the plaintiff could remove by tendering to the moderator, collector of taxes, or one of the selectmen, all reasonable expenses which the town had incurred by reason of such assistance within that period.   G. L., c. 29, ss. 3, 4.   The statute does not prescribe the mode by which the amount to be paid or tendered shall be determined.   As it is no part of the duty of the moderator or collector of taxes to furnish assistance to persons standing in need of relief, they might be in no position to furnish information on that point.   The same would be true of the selectmen, except when they are *ex officio* overseers of the poor.   It might not be unreasonable to require them to ascertain the amount from the overseers.   The statute seems to contemplate that one who has been aided by the town will have some knowledge, more or less accurate, as to the amount to be refunded, and will be able to determine the amount with such information as he may be able to obtain from the officers who furnished the relief.   The right of the person relieved to refund to the town the amount expended for his relief, includes the corresponding duty on the part of the officer to whom payment is tendered to receive it.   It being the duty of the selectmen to receive the money when offered, we think it must also be their duty to determine, when applied to, what amount of assistance was rendered by them acting as overseers of the poor, or if the assistance was rendered by the overseers, if they can reasonably ascertain the amount.   The proceeding is necessarily of a summary character, admitting of little or no delay, with no opportunity for appeal, and ordinarily attended with no difficulty.   If the amount exacted should prove excessive, a remedy for the grievance would perhaps be found in a suit against the town to recover back the excess.

If it was the duty of the defendants to give the plaintiff correct information, so far as they had or could reasonably obtain information, when he demanded to be informed of the amount of assistance furnished to him, it does not appear that they acted otherwise than in good faith and with reasonable care.   They were not warrantors of the correctness of the information they gave.   If the question of good faith or due care is material, they are not found to have been in any fault.   It does not appear that their error was a

result of bad faith or negligence.  *Penacook Savings Bank* v. *Hubbard*, 58 N. H. 167; *Hooper* v. *Robinson*, 98 U. S. 528.

The case of *Ford* v. *Holden*, 39 N. H. 143, is not in point. In that case the defendants, acting as selectmen, were charged with the duty of regulating the check-list, and wrongfully required the plaintiff to pay certain taxes which had been abated at his request, as a condition precedent to inserting his name in the check-list; and although they acted honestly, and paid the money over to the town treasurer before its repayment was demanded, yet they were held liable to repay it. The decision went upon the ground that the defendants had no authority to demand the taxes, or to make their payment a condition upon which the insertion of the plaintiff's name in the check-list was to depend; that they had by the exercise of their official power obtained money from the plaintiff, to which by law neither they as selectmen nor the town were entitled.

The defendants in this case exercised no official power to obtain money from the plaintiff, either as a condition precedent to inserting his name in the check-list, or otherwise. At his request, or upon his demand, they determined the amount expended for his relief, honestly for aught that appears, received the money tendered, and paid the same over to the town treasurer. The amount paid proves to have been excessive. For the excess, the plaintiff's remedy would seem to be by a suit against the town, if it was his money that was paid. The defendants acted as mere agents of the town in receiving the money, and the right of the town to retain the money cannot be tried in an action against the agent. *Weeks* v. *Hill*, 38 N. H. 199; *Winkley* v. *Foye*, 28 N. H. 513.

*Exceptions overruled.*

STANLEY, J., did not sit: the others concurred.