### MARINE INSURANCE CO. v. WALSH–UPSTILL COAL CO.

1. CONSTRUCTION OF POLICY OF MARINE INSURANCE.

A contract for insurance upon a printed form prepared and issued by an insurance company in which, following the address in the policy, it is stated: " Insurance is wanted by *The Walsh-Upstill Coal Company* covering all shipments of the following description of articles, viz : *sundry coal cargoes*, belonging to *them and as agents*, at risk, and reported as herein stipulated," etc., (the Roman being printed words and italics typewritten therein and the punctuation as given,) insures all cargoes which are at risk whether they are the property of insured as principal or as agent. The words " at risk " refer to the property and not to the parties or the agent.

2. PARTY MAY INSURE AS AGENT.

While it is a rule of law that an insurable interest in the party who takes out insurance is necessary to the validity of the policy and that such interest must be a direct one, yet a party may take out a policy upon property held as agent, and such policies are binding in favor of the actual owner, though his name is not disclosed.

3. NOT NECESSARY TO DISCLOSE PRINCIPAL, WHEN.

Where an application for or a policy of insurance speaks of the property as belonging to assured " as agent," this is sufficient to notify the insurance company that assured has a principal and that the insurance is for the benefit of such principal ; and where the insurance company makes no inquiry as to who is the principal, it cannot be heard to complain that the principal was not disclosed.

4. AGENTS MAY SUE UNDER SEC. 4995, REV. STAT.

Under the policy above referred to a suit by the agents in their own name is authorized by Sec. 4995, Rev. Stat., authorizing an executor, administrator or guardian, a trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, etc., to sue.

HEARD ON ERROR.

Goulder, Holding & Masten, for plaintiff in error.

Roger M. Lee, for defendant in error, cited :

Measure of recovery· 2 Phillips Insurance, Sec. 1226; Richards Insurance, Sec. 112.

Action in name of real party in interest. Section 3993, Rev. Stat. and 4995, Rev. Stat.; Davis v. Harness, 38 Ohio St.· 397; Protection Ins. Co. v. Wilson, 6 Ohio St. 553, 563.

A policy made in the name of a particular person " for whom it may concern," *or with any other equivalent clause*, will be applied to the interest of the party or parties for whom it is intended by the person effecting the insurance if such party has authorized its being made beforehand or subsequently adopts it; and parol evidence is admissible to

show to whose benefit the insurance was intended. 1 Phillips Insurance, Sec. 363; Richards Insurance, Secs. 131, 132; Protection Ins. Co. v. Wilson, 6 Ohio St. 553; Story Agency, Sec. 161; Rider v. Insurance Co., 20 Pick. 259.

The language "all shipments belonging to them, or as agents" is equivalent to "for whom it may concern." Hooper v. Robinson, 98 U. S. 528; 1 Phillips Insurance, Sec. 409; Turner v. Burrows, 8 Wend. 144; Burrows v. Turner, 24 Wend. 276; Sunderland Marine Ins. Co. v. Kearney, 16 Adol. & El. 925; Shaumat Refining Co. v. Insurance Co., 12 Gray, 540; Farrow v. Insurance Co., 18 Pick. 53; Davis v. Boardman, 12 Mass. 80, 83; Waring v. Indemnity Fire Ins. Co., 45 N. Y. 606 [6 Am. Rep. 146]; Daniels v. Insurance Co., 5 Fed. Rep. 425.

It is of no consequence that the Walsh–Upstill Company did not inform Hutchinson & Company that this insurance was for the benefit of the consignee. Mechem Agency, Sec. 796; Huntington v. Knox, 7 Cush. 371, 375; Davis v. Boardman, 12 Mass. 80, 83; Daniels v. Insurance Co., 5 Fed. Rep. 425.

The Walsh–Upstill Company's failure to inform Hutchinson & Company for whom this insurance was obtained did not amount to a concealment. 1 Phillips Insurance, Secs. 568, 571, 585; Nicoll v. American Ins. Co., 3 Woodb. & M. (C. C.) 529.

It is not necessary, under such a policy, that the holder of the policy notify the insurer whether it is insuring as principal or as agent. This is a matter for the insurer to make inquiry concerning, if he desires to be informed, and if he fails to inquire, the holder of the policy is not required to give information upon the subject, nor is it guilty of concealment because it fails to do so. Hooper v. Robinson, 98 U. S. 528, 539; Davis v. Boardman, 12 Mass. 80, 83; Hale v. Burr, 12 Mass. 86, 88.

Papers to be taken by the jury. Railroad Co. v. McCamey, 5 Circ. Dec. 631 (12 R. 543).

Interrogatories for the jury. Ohio Rev. Stat., Secs. 52, 101; Sun Oil Co. v. Insurance Co., 8 Circ. Dec. 145 (15 R. 355); Union, etc., Ins. Co. v. McMillen, 24 Ohio St. 67; Manhattan Ins. Co. v. Ellis, 32 Ohio St. 388.

## MARVIN, J.

Each of the parties to this action is a corporation. The defendant in error was plaintiff in the original action, and the plaintiff in error was defendant. The terms "plaintiff" and "defendant," used in this opinion, refer to the parties respectively as they stood in the original action.

Insurance Co. v. Coal Co.

The defendant is a fire and marine insurance company organized under the laws of the United Kingdoms of Great Britain and Ireland, and is, in conformity with the laws of Ohio, authorized to do business as such in this state.

Suit was brought by the plaintiff for the use of the R. E. Elmore Company. The plaintiff was engaged in the city of Cleveland in selling, shipping and handling coal to be conveyed on shipboard to various points on the upper lakes. On April 26, 1897, the defendant issued to the plaintiff a certain policy of insurance, a copy of which is annexed to the petition. This policy was issued, as stated therein, "as per contract dated April 1, 1897." Such contract reads as follows:

"Contract Proposition." To the Marine Insurance Co., L'td, of London, England: Insurance is wanted by The Walsh–Upstill Coal Company covering all shipments of the following description of articles, viz.: sundry coal cargoes, belonging to them and as agents, at risk, and reported as herein stipulated, from the first day of April, 1897, until the first day of December, 1897, at and from lake ports, by the following routes, modes of conveyance and rates of premium, viz.:

"From Lake Erie to Detroit and St. Clair river, and to Lakes Huron, Ontario, Michigan and Superior, 15 cents per $100.00 on standard sail and steam vessels not classing below A2$\frac{1}{2}$.

"B1 vessels, 22$\frac{1}{2}$ cents per $100.00.

"B1$\frac{1}{2}$ vessels, 30 cents per $100.00 to September 1st.

"B1$\frac{1}{2}$ vessels, 40 cents per $100.00 to October 1st.

"B1$\frac{1}{2}$ vessels, 60 cents per $100.00 to November 1st.

"B1$\frac{1}{2}$ vessels, 75 cents per $100.00 to November 30th.

Subject to the conditions of Cargo Policy No. ——— of ——— Insurance Co., L'td, of ——————————.

"All shipments attaching under said Policy shall be valued at invoice cost with ten (10%) per cent. added unless otherwise agreed upon prior to shipment; each shipment to be reported to the agent of the said Insurance Co., at Cleveland, Ohio, as soon as receiving advices.

"Shipments on any one vessel limited to $———. Premiums payable monthly.

"Dated Cleveland, Ohio, April 1, 1897.

"Accepted ——————— 189–   ——————————————.

                "THE WALSH-UPSTILL COAL Co.

                  "J. P. WALSH, Applicant,

                        " General Manager.

                "HUTCHINSON & Co., Agents.

"This contract is not binding until approved by C. A. Macdonald & Co., Gen'l Agents."

13 O. C. C. 13-23

That this contract was so approved, is evidenced by the policy issued thereunder which was signed by C. A. Macdonald & Co., and in which this contract proposition is directly referred to.

On November 28, 1897, the plaintiff shipped a cargo of coal from Cleveland, consigned to the R. P. Elmore Company at Milwaukee, Wisconsin, on the steam propeller "Egyptian." On the same day the plaintiff reported such shipment to the agents of the defendant at Cleveland and such agents endorsed such shipment and the insurance thereof in the sum of $3,990.72, at a premium of $5.99, in the endorsement book used in connection with said policy of insurance. The cargo thus shipped consisted of 1,836 tons and 900 pounds of coal, of which 1-713 tons and 600 pounds had been sold by the plaintiff to said Elmore Company and 223 tons and 100 pounds had been sold by the Evan Morris Coal Company to the said Elmore Company; both sales to be delivered at Cleveland on board ship by the seller.

On the night of December 1, 1897, while making the voyage with said cargo of coal to Milwaukee, said steamer "Egyptian" caught fire and burned to the water's edge and said cargo was totally lost. Proper notice and proofs of such loss were served upon the defendant, and the prayer of the petition is for judgment for the amount of the indemnity in the report entered upon the endorsement book as hereinbefore mentioned.

The trial resulted in a judgment for the plaintiff for $4,633, being the amount of such indemnity together with interest. A bill of exceptions, with all the evidence adduced at the trial, is filed with the petition in error in this court.

It will be noticed that at the time of the loss no part of this coal was owned by the plaintiff, all of it having become the property of the Elmore Company when delivered on shipboard at Cleveland. The claim of the plaintiff is, that though it had no ownership in the coal at the time of the loss, it was the agent of the Elmore Company in securing the insurance and shipping the coal, and that by the terms of its contract under which the policy was issued, such policy covered as well coal shipped by it as agent, as that shipped by it as owner, and that the words of the contract, "covering all shipments of the following description of articles, viz: sundry coal cargoes, belonging to them and as agents, at risk, and reported as herein stipulated," etc., is, in effect, a contract to insure such cargoes of coal as should be shipped by it as owner, and also such as should be shipped by it as agent.

This contract is upon a printed form of the insurance company, and it is a part of the sheet of paper on which is the printed policy itself. After the address in the policy, to the insurance company, these words

are in print, " Insurance is wanted by ;" then follow in typewriting, the words, " The Walsh-Upstill Coal Company ;" then follow, in print, the words, " covering all shipments of the following description of articles, viz.;" then follows these words in typewriting, " sundry coal cargoes ;" then, in print, the words " belonging to ;" then, in typewriting, " them and as agents ;" then in print, " at risk, and reported as herein stipu-lated," etc. All of this typewritten matter is written in blank spaces left for that purposes in the printed form.

Stress is laid by the defendant upon the fact that after the words " at risk " is a comma ; and it is said the period which follows the type-written words " them and as agents," should not be construed as sepa-rating from the printed words " at risk," and that, therefore, the true meaning is that the insurance provided for is upon cargoes which belong to the plaintiff as owner, or such as such plaintiff has a risk in as agent ; that except upon cargoes owned by the plaintiff, there is no insurance provided for unless the plaintiff has a risk in the property as agent of the owner: While on the part of the plaintiff, it is contended that the printed words " at risk," refer not to the agent but to the property, and that, therefore, the true interpretation of the contract is that the insur-ance is upon all cargoes which are at risk from some of the perils insured against, whether such cargoes are owned by the plaintiff or they be car-goes owned by those for whom the plaintiff is agent.

It is said that this construction is strenthened by the fact that there is a blank left in the printed form, between the printed words " belong-ing to " and the printed words " at risk " with the comma following the word " risk," and that on the part of the insurance company who prepared this blank it must have been understood that something would be written in this blank other than the name of the party with whom the insurance company contracted ; otherwise, the words " the assured," or equivalent words would have been printed in this blank space; that the insurance company must have understood that the name of some-body other than the assured, was to be written in this blank space, and that the words " at risk " clearly refer to the cargoes or other property which should be named in the blank space where the words " sundry coal cargoes " are now typewritten.

This seems to us the true construction of this contract. If the con-tract is at all ambiguous on this point, it seems a much less strained construction to say that the words " at risk " in the printed form, refer to the property to be insured rather than to the parties for whose benefit the insurance should be taken out.

Defendant calls attention to a large number of authorities in port of the proposition that an insurable interest in the party who takes

out the insurance, is necessary to the validity of a policy of insurance, and that such interest must be a direct one. Among other authorities, 1 May on Insurance, Sec. 74, is cited, which reads:

"When there is no interest at all to be protected, a policy of insurance will be invalid as counter to the spirit and purpose of the contract as well as against public policy."

As a general proposition, this is not disputed by the plaintiff, and indeed, is so thoroughly supported by the authorities that it cannot be disputed. Notwithstanding this, it is held by numerous authorities, many of which are cited and quoted from in the brief of the plaintiff, that policies of insurance issued to the agents of the owners of the property insured, are binding upon the insurance company in favor of the actual owner.

In Protection Insurance Co. v. Wilson & Co., 6 Ohio St. 554, the first clause of the syllabus reads:

"Insurance brokers, holding an open policy of insurance for themselves and whom it may concern, may, in case of damage to property covered by their policy, maintain in their names an action for the use of the owners, although the latter are not named in the policy, if it sufficiently appear that the insurance was procured for their benefit."

In this case, Wilson & Company had received from the insurance company an open policy to "themselves or whom it may concern," which became operative by the endorsement of Samuel E. Mack, the agent of the company, to the extent named by him. The property insured was owned by various parties for whose benefit the suit was brought by Wilson & Company. In the opinion, on page 559, Judge Bowen uses this language:

"Wilson & Co., in perfecting this insurance, were the agents of the several owners of the cargo. They acquired and held an interest for them to the amount covered by the insurance. They stood in the light of the mutual agents of the insurers as well as of the insured. Shaw & Co. (who were forwarding merchants), were interested only in shipping the goods to their owners, and in procuring for them the insurance which was desired. They acquired no insurable interest themselves, nor any right to sue. But Wilson & Co. occupy quite a different relation to the consignees. They procured and held, in their own names, but for those whom it might concern, the policy and its indorsement. An interest covered by the insurance, was thus created, which it is proper for them to enforce, and which is of such a nature as authorized the suit to be brought and carried on in their names for the use of those who have sustained the loss."

In Hooper v. Robinson, 98 U. S. 528, the first clause of the syllabus reads :

" A policy upon a cargo in the name of A, 'on account of whom it may concern,' or with other equivalent terms, will inure to the interest of the party for whom it was intended by A., provided he at the time of effecting the insurance, had the requisite authority from such party, or the latter subsequently adopted it."

Story on Agency, Sec. 161, uses this language :

"So if an agent should procure a policy of insurance in his own name for the benefit of his principal, the agent as well as the principal may sue thereon."

In Davis v. Boardman, 12 Mass. 80, a policy of insurance was issued, containing these words :

" ' Mr. Samuel Davis, or as agent, doth make insurance and cause to be insured, lost or not lost, the sum of three thousand dollars on the hull and appurtenances of the brig Eliza and one thousand dollars on her cargo from Bath to Cork.' "

On page 85 of the opinion, this language is used :

"A policy written in the old form, viz.: 'as well as in the plaintiff's own name, as for and in the name and names of all and every other person or persons, to whom the same may appertain,' etc., would have better expressed the intent of the parties. But that form has been disused in this state for twenty years past ; and probably was not familiar to the broker, nor to any of the parties concerned. When the defendant agreed to insure for the plaintiff as agent, either he was informed that Richardson was the principal, or he waived all information on the subject. In either case the policy is equally valid and effectual."

In Waring v. Insurance. Co., 45 N. Y. 606 [6 Am. Rep. 146], this language is used in the syllabus :

"A person may insure in his own name the property of another for the benefit of the owner without his previous authority, and such insurance will inure to the party intended to be protected if adopted by him, even after loss has occurred. It must be shown that insurance of the owner was the intention of the person effecting the insurance, when the contract was made."

In Daniels v. Insurance Co., 5 Fed. Rep. 425, this language is used by Judge Gresham in the opinion at page 429 :

" If a policy runs to A B, for whom it may concern, or A B, as agent or in some trust capacity, an action at law may be brought in case of loss, in the name of A B, disclosing the name of the real party in interest, or by the real owner of the property."

From these and numerous other authorities, it seems clear that the plaintiff here might take out a policy upon property not owned by it, though simply acting as agents for the owner, the policy running to it as agent and the company be bound by such policy. The language of this contract as already quoted, speaks of the property as belonging to the plaintiff *and as agents*.    Surely the words "as agents" were sufficient to notify the defendant that the plaintiff had a principal for whom it was agent, or might act in taking out insurance, and that so acting for such principal, the insurance was for the benefit of such principal, and so long as the defendant made no inquiry as to who was such principal, it cannot complain that the principal was not disclosed to it.

It is complained on the part of the defendant that the court erred in its charge to the jury.    The court said, among other things :

" If you find that the coal mentioned in the petition was the property of the R. E. Elmore Company from and after the time it was placed upon the steamer ' Egyptian ;' that prior to or at the time of such shipment the said The R. E. Elmore Company requested the plaintiff, as its agent, to insure said coal for the benefit of said The R. E. Elmore Company ; that plaintiff reported said shipment to the defendant's Cleveland agents on November 29, 1897, and that defendant's said agents, upon receiving such report, signed their firm name opposite the entry of such report, in the plaintiff's policy book in which insurance under said policy was regularly entered and endorsed ; then I charge you that said cargo was regularly and properly insured by the defendant in favor of, and in the name of the plaintiff as agent of the R. E. Elmore Company, and, in that event, if you find the other facts set forth in the petition in favor of the plaintiff, then the plaintiff is entitled to recover in this action as agent for the R. E. Elmore Company the value of this coal, that is, its value on board the vessel at Cleveland, November 29, 1897."

In other parts of the charge, the court uses language to the effect that the words of this contract are as binding upon the company as though the name of the owner had been disclosed in the contract.    All of this is complained of.    What has already been said, indicates what we hold on this point, and that there was no error in the charge of the court.

Much is said in the defendant's brief, about what constitutes an open policy.    It is unimportant under what designation the contract here sued upon comes ; if the words are equivalent to those used in many policies, " for whom it may concern," then the insurance was binding upon the company for the benefit of the owners and the suit

was properly brought by the plaintiff under Sec. 4995, Rev. Stat., which reads:

" An executor, administrator, or guardian, a trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by ˙statute, may bring an action without joining with him the person for whose benefit it is prosecuted ; and officers may sue and be sued in such name as is authorized by law."

The first and second requests to charge, made by the defendant, were properly refused. The reason for such refusal is justified by what has already been said in this opinion.

The refusal to give the. third request was not prejudicial to the defendant in view of what was said in the charge.

Without going further into a discussion of the case except to say that the evidence clearly shows that the plaintiff was the agent of the Elmore Company, authorized to effect insurance upon this cargo, we find no error in the record justifying a reversal, and the judgment of the court of common pleas is affirmed.