Peelijg, J.,
delivered the opinion of the court:
The claims in these cases arose out of the treaty of September 30, 1800, between the .Republic of France and the United States (Public Ti'eaties of the United States, p. 225), and are prosecuted under the act of January 20, 1885 (23 Stat. L., 283), known as the French spoliation act, whereby jurisdiction is conferred upon the court to find the facts in relation to the validity of claims of citizens of the United States to indemnity upon the French Government arising out of captures, detentions, seizures, condemnations, and confiscations prior to the convention between the two countries concluded September 30,1800, and report such facts and the court’s conclusions thereon to Congress for final action.
The schooner John Eason, as disclosed bjr the findings, while peacefully pursuing a commercial voyage with a neutral cargo from Norfolk, Va., to Kingston, in the island of Jamaica, was captured on the high seas about August 1, 1798, by the French privateer La Liberte, Captain Brard, and taken into Port de Paix, where, on or about August 14, 1798, both vessel and cargo were condemned and sold by the French prize tribunal sitting at Cape Francois, and became a total loss to the owners.
The ground of condemnation set forth in the decree, as recited in the findings, was that there were certain informali-ities in the róle d’equipage.
The John Eason was a duly registered vessel of the United States, and was, together with her cargo, owned by citizens of the United States.
Subsequent to the condemnation of the vessel and cargo the owners thereof effected the insurance set forth in the findings, to wit, August 20 and 24, and September 20, 1798, “lost or not lost,” on vessel and cargo, paying therefor 25 per cent premium on $3,000, 17£ per cent on $4,000, and 15 per cent on $3,000, or in all a premium of $1,900.
There is no controversy but that the vessel and cargo were illegally condemned by the French prize court, and that the owners thereof had valid claims of indemnity upon the French Government for the loss sustained in consequence thereof prior to the ratification of the convention of September 30, 1800. But the defendants contend that inasmuch as the insur- *447 anee was effected subsequent to the capture and condemnation of the vessel and cargo, France is not liable for the premium paid therefor, and, if not, then the United States is not chargeable therewith under the treaty of 1800.
Though the insurance was effected on the vessel and cargo, “lost or not lost,” subsequent to the condemnation and loss of the property so insured, the contract as between the parties thereto was valid. (Sutherland v. Pratt and others, 11 M. & W., 296; Hooper v. Davidson, 98 U. S., 528, 537.)
The theory upon which the premium of insurance had been allowed is that such cost added to the value of the property insured, and that in case of the loss of such property by the illegal acts of France the measure of damages was the value of the property so lost.
But in the present case, as the insurance was not effected until after the condemnation and loss of the property, the cost thereof is not an element to be reckoned in determining the value of the property; and, if not, then, as the liability of the United States follows that of France, no allowance can be made in the claimants’ favor for the premium of insurance so paid.
As the insurance companies paid the claimants’ loss, as set forth in the findings, they are entitled to be subrogated to the claimants’ rights to the extent of the loss so paid.
The findings and conclusions herein, together with this opinion, will be certified to Congress for their final action.