Peelle, Ch. J.,
delivered the opinion of the court:
On May 20, 1800, the schooner Betsey, Francis Bulkley, master, was captured on her homeward voyage from St. Vincent by a French privateer and the vessel and cargo were condemned as good prize by the French prize court sitting at Basse Terre, in the island of Guadeloupe, June 22, 1800. The illegality of the condemnation is rightly conceded by the defendants.
The vessel and cargo were sold under the decree and became a total loss to the owners, John Morgan and Francis Bulkley. Some ten months thereafter, in March, 1801,.the vessel appeared in the port of New York under the name Belen, owned by a Spaniard, who sold the vessel to one George Barnewell, an American citizen; but Barnewell not having been one of the original owners of the vessel at the time of her condemnation was precluded by law, and particularly by Revised Statutes, section 4165, from procuring an American register. To accomplish that end Barnewell on March 21, 1801, purported to sell by a bill of sale the vessel for the consideration of $3,000 (which was not paid) to John Morgan, one of the former owners thereof, who, on April 1, 1801, procured a register in his own name and in that of his former associate owner, Francis Bulkley, under the original name of the schooner Betsey. Within one week thereafter Morgan resold the vessel to George Barnewell, who appears to have paid to Morgan, in addition to the cost of the register, the sum of $250, which sum was paid by Morgan to the underwriters on said vessel, but to which underwriters does not appear. After the resale of the vessel Barnewell on April 8, 1801, procured a register in his own name.
*512 The defendants’ contention is (1) that .the case conies within the ruling of the court in the case of the brig Hiram, Humphrey (23 C. Cls., 431, 441); (2) that the transfer of the vessel by Barnewell to Morgan was simply to enable Morgan to procure, for the benefit of Barnewell, a register, and that for that reason the transactions were in violation oMaw and a fraud upon the United States.
Respecting the first contention, the brig Hiram is not controlling, as in that case the vessel was brought in by the master for the benefit of the owners, and though the amount paid therefor was trifling it was held to measure the extent of the liability of France.
In the present case it is not shown that the vessel was bought in by the owners or by anyone for them, or that any benefit therefrom accrued to them by reason of the condemnation and sale other than the $250 paid by Barnewell to Morgan for securing the register, which sum appears to have been paid to the underwriters, doubtless for the reason that upon the payment of the insurance on the vessel the owners assigned their interest therein to the insurance company, who thereby became subrogated to their rights.
The second ground of defense is based on the fraud of Morgan and Barnewell in procuring the register, and that having perpetrated the fraud Morgan is estopped from now asserting that the vessel was not repurchased for the benefit of the owners, or at least of himself. If the affidavit of Morgan upon which the register was issued was false, the United States had the right of election to declare the ship or its value forfeited (United States v. Grundy, 3 Cranch., 338, 351; The Venus, 8 Cranch., 253, 276; Six Hundred Tons of Iron Ore, 9 F. R., 595), but that would not have affected the liability of France which had accrued long prior thereto.
Under the act of our jurisdiction citizens of the United States who, prior to the ratification of the treaty with France concluded September 30,1800, had valid claims on the French Government for indemnity growing out of her illegal acts, are given the right to prosecute the same on the theory that when the Government relinquished the claims of her citizens to France in consideration of the relinquishment by France of her national claim against the United States, she thereby *513 took from her citizens private property for public use, for which just compensation should be made. That being so, the Government, in respect to these claims, stands in the right of France, so that whatever defense France had or could have interposed against such claims at the time of condemnation is available to the United States. {The ship Joanna, 24 C. Cls. R., 198.)
The case is to be determined as one between the citizen and the French Government “ according to the rules of law, municipal and international, and the treaties of the United States applicable to the same,” as provided in the act of our jurisdiction.
As before stated, the defendants invoke the doctrine of estoppel. Estoppel is a rule of evidence, and was early stated by Lord Denman in the case of Pickard v. Sears (6 A. & E., 469) :
“ Where one by his words or conduct willfully causes another to believe the existence of a certain state of things and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the time.” (See also the case of Snare & Triest Co.. 43 C. Cls., 364, 367.)
It certainly can not be contended that the position of the United States respecting a claim against France was changed by reason of the acts of Morgan and Barnewell in procuring the register, as the rights of Morgan were fixed by the treaty between the United States and France at the date thereof, to wit, September 30, 1800, while the fraud of Morgan in procuring the register was not until April 1, 1801, or six months thereafter. Certainly France could not have interposed this defense, as it is not one which existed at the time the vessel was condemned and sold; and not being a defense which would have been available to France at the time, it can not now be asserted by the United States, in whose right they defend and whose liability they assume under the act of our jurisdiction.
The issue being one between a citizen of the United States and France, he is entitled to have his rights adjudicated on the theory of the illegality of the acts of France in capturing, *514 condemning, and selling bis vessel. His subsequent violar tion of a law of the United States, for which the United States had their remedy, can not be interposed to defeat the claim against • France for her unlawful acts. This being true, the doctrine of estoppel can have no application to the liability of France.
The presumption may fairly be indulged that the vessel and cargo under the decree of condemnation were sold and became a total loss to the owners. This view is strengthened by reason of the ownership of the vessel by the Spaniard and the change of the name of the vessel to Belen. The Spaniard sold the vessel to Barnewell, who was not one of her former owners, and for that reason he could not procure a register. There is nothing to rebut the presumption of good faith in this sale. But Barnewell, to enable him to procure a register under said section 4165, sold the vessel to John Morgan, one of her former owners. Hence, whatever fraud was perpetrated was by Barnewell, the bona fide owner of the vessel, through Morgan, one of her former owners; and while Morgan permitted himself to be a party to the fraud he was paid $250, which went to the underwriters doubtless as subrogees.
Furthermore, we think it may fairly be presumed that the vessel, when! sold under the decree, was purchased by the Spaniard on his own account, as the contrary is not shown; and the subsequent circumstances justify that presumption.
For these reasons the claimants are entitled to an allowance for the value of the vessel as well as for the cargo and freight earnings, the adventure owned by the master and the premiums of insurance paid, except as to the premium of insurance on $2,000 effected by Morgan on his own interest-in the vessel the day after she was captured, which is not recoverable against the United States. (Schr. John Eason, 37 C. Cls., 443, 447; Sloop Townsend, 42 C. Cls., 140, 145; Schr. Two Cousins, 42 C. Cls., 436, 440.)
The defendants make practically the same defense in this case they did in the case of The Mercury, Gilpatrick, wherein the court filed findings in May, 1908, refusing to make any allowance. But in that case the owners, while procuring the reregistration of the vessel, failed to show from whom or *515 by what means they repossessed themselves of the vessel or whether anyone other than, themselves had ever had any interest therein, the burden of which was upon them. In the absence, therefore, of any showing as to how the owners became possessed of the vessel after the condemnation we applied the ruling in the case of the brig Iliram,, Humphrey {supra); but as in The Mercury the amount of the repurchase did not appear, nor the value, character,- nor ownership of the cargo, no allowance -was made.
The findings herein, together with this opinion, will be certified to Congress.