### BARTHELEMY LEBEAU, for the use of, &c. *v.* JOHN GLAZE.

*The rule is without exception that the mortgage falls with the principle obligation to which it is accessory.*

APPEAL from the District Court, Parish of St. Landry, *Cushman*, J., presiding. *Olivier*, for plaintiff and appellant. *T. H. Lewis, Lewis & Porter*, and *Swayzé & Moore*, for defendant and appellant.

*Olivier*, for plaintiff:

The general principle, that when the principal obligation is prescribed, the accessory falls with it, is one which will not be controverted when the property mortgaged remains in the possession of the original obligor. But it is respectfully submitted, that when the property goes into the hands of a third person, having notice of the incumbrance, and against whom the hypothecary action is brought within the time for prescription, the mortgage becomes, as it were, isolated from the principal obligation, and is more particularly in contact with the right of property of the third possessor. In other words, though the notes executed by P. H. Glaze may be prescribed, that prescription does not carry with it the extinction of the mortgage, but that prescription alone can avail which the third possessor could set up against an adverse claim to the property itself. I will not be charged, in urging this doctrine, which I believe to be the true one—the only one resting upon the immutable principles of eternal justice—with confounding the principles of modern jurisprudence with those which prevailed in the days of the law *Cum Notissimi*. This law, which fastened the effect of the mortgage upon the mortgagor, when the mortgaged property had remained in his possession, though the personal action against him was barred, was clearly irrational and in conflict with the maxim which we find in the Roman Law itself—that with the principal obligation perishes the accessory. In France it is provided (C. N., Art. 2180) that the debtor acquires the prescription of the mortgage, *as to the property which remains in his hands*, by the time fixed for the prescription of the action which gives the mortgage or the privilege. Thus, in that case, the mortgage—the accessory—follows the fate of the principal obligation. But not so, when the mortgaged property passes into the hands of a third party. Grenier, in his Traité des Hypotheques, Vol. II., No 510, tells us:—

L'hypothèque se prescrit par le même laps de temps que l'obligation principale, lorsque l'immeuble affecté est resté en la possession du débiteur; mais lorsque cet immeuble passe dans d'autres mains, l'hypothèque le suit; elle s'isole, pour ainsi dire, de l'obligation, et se trouve plus particulièrement en contact avec le droit de propriété du nouveau possesseur. Ce n'était donc plus dans ce cas, le temps réglé pour prescrire l'obligation, mais bien celui fixé pour prescrire la propriété, qui devait servir de base au législateur pour déterminer la prescription de l'hypothèque ; aussi, l'art. 2180 porte, &c.

Troplong, in his Droit Civil Explique, verbo *Hypotheques*, Vol. IV., page 44, No. 878, says:—

Dans le cas où la prescription est opposée par un tiers détenteur de l'immeuble hypothéqué, on suivait, d'après le droit romain, les principes généraux en matière de prescription. Le tiers détenteur prescrivait par dix et vingt ans lorsqu'il avait titre et bonne foi, ou par trente ans lorsqu'il était de mauvaise foi. C'est aussi ce qui est décidé par notre article. Le tiers détenteur prescrit contre l'hypothèque par le même laps de temps qu'il peut prescrire la propriété.

It results from this reasoning, that when the property mortgaged goes out of the hands of the mortgagor, the creditor has two actions; one, his personal action against his debtor, and the other, his hypothecary action, against the third possessor, and his rights against each become distinct and independent. He may interrupt prescription in one case, though he may have suffered it to run in the other. Is there any textual provision in our code which clashes with the doctrine contended for, and which prevails in France? It is true our code declares that the mortgage is accessory to a principal obligation, of which it is to secure the execution, and that when the principal debt is extinguished, the mortgage disappears with it. Such was the principle of the Roman law, and such is now the principle in France. True, the article of the French code restricts the principle to cases in which the property mortgaged has remained in the hands of the mortgagor, and our code does not so provide in express terms. Must we, then, because no distinction is expressly made, say that the Legislature intended that none should be made, or shall we adopt a more rational system, and go back for information to those countries which have had similar laws for centuries before they passed to us?

Does the language of the Code (Art. 3252) bear out the defendant in the position assumed by his counsel, that this action cannot stand, because, first, the notes being prescribed, the mortgage falls with it, and secondly, because the mortgage was not reinscribed within the time required by law. Article 3362 of the Code provides that " Creditors who have either a privilege or mortgage on immovable property or slaves, may pursue their claim on them in whatever hands they may happen to pass, to be paid out of their proceeds according to their rank, provided that their titles have been registered according to law."— Plaintiff's mortgage having been registered according to law, his right of action against the defendant was a real right which attached the moment the notes which he held matured, the slaves having gone into defendant's possession in 1841. (10 L. R. 496.) In 1845 the plaintiff brings his action to subject the slaves to the payment of the mortgage, and *Patrick H. Glaze* having, years before, removed to Texas, a bankrupt, no step is taken against him personally on the notes. In this view of the case, it is admitted that if the plaintiff had taken no action under the mortgage before the notes were prescribed, his hypothecary action could not stand ; but having commenced his action in 1845, is the mortgage gone? Under Article 3362 of the Code, the plaintiff in 1845 commenced the pursuit of his claims on these slaves in the hands of the defendant. At that time, at least, it will be conceded, no prescription could be opposed to his action. After the amicable demand, and notice to him as their possessor, *John A. Glaze*, was bound, under Article 3363 of the Code, to pay the debt, or relinquish the property. He did not do it. The plaintiff, by his suit, then demands that the slaves mortgaged be seized and sold to pay his claim. This right he certainly had, and having exercised that right against *John A. Glaze* the third possessor of the mortgaged property, the only person against whom the right could be exercised, is it possible that the plaintiff should have now lost that right, because there was some delay in bringing that right to a final issue? Is not this confounding the right with the exercise of the right? And if you say that prescription has run, whilst the right, guarantied by Article 3362, was asserted in the only legal manner that it could be—that is, by citation—what becomes of Article 3484 of the Code? Is the language there used mere inanity, having no meaning at all? Is it a mere lure which the Code holds out to the creditor, when it tells him in express terms, " A legal interruption takes place when the possessor has been cited to appear before a court of justice on account either of the property or of the possession ?" But I may be told that this operates an interruption of the prescription by which property is acquired, but not of the prescription by which debts are discharged. I answer that the causes which interrupt prescription in the two cases are the same. (C. C., 3516.)

I know that it has been held again and again, that the extinction of the principal obligation by prescription, payment, novation, or otherwise, operates a release of the mortgage. But all the decisions I have read on the subject, are confined to cases where the hypothecary action had not been instituted before the extinction of the principal obligation by prescription. This is the first time, then, as I am aware, that the question comes up for solution. Our Code contains no express disposition on the subject. Neither public policy nor the demands of justice prescribe the recognition of a principle by which this action must be defeated.

Is it true, however, that the notes held by plaintiff are prescribed? It will be conceded that they constitute the title or evidence by which the principal obligation was created; if so, are they not, with the mortgage which was designed to secure their payment, made the basis of this action? Was not then the defendant, the third possessor, at the inception of this action, bound to the plaintiff to the full value of the slaves held by him? If so, he was, *pro tanto*, a co-debtor of *P. H. Glaze*, and for that amount was as much bound to the plaintiff as *P. H. Glaze* himself. It follows, necessarily, that the citation served on *John A. Glaze* had the effect of interrupting prescription as to *P. H. Glaze*, the maker of the notes. At all events, the defendant cannot plead the prescription of the notes. Prescription is an exception which the creditor and his debtors alone can plead. The obligation subsists until they avail themselves of the prescription; Courts of justice cannot supply it. (2 An. 368.) As to the first two notes, the payment of which this mortgage was also intended to secure, it is clear that they have been extinguished by prescription, and the mortgage itself is extinguished *pro tanto*. (2 An. 927.)

The next objection is that the mortgage was not reinscribed. That the pendency of an hypothecary action to subject property to a judicial mortgage does not exempt the mortgage from the necessity of reinscription is no doubt true. In the case reported at p. 632, in 5 An., the plaintiff claimed to subject the property to her judicial mortgage; posterior to the first inscription of the judgment from which resulted the mortgage, rights had been acquired upon the property by another party, and as a judicial mortgage "exists and has vitality only by inscription, if there be no inscription there can be no judicial mortgage," and the third party, who in the meantime has acquired adverse rights, must be protected against the mortgage. Can the same be said of a conventional mortgage? Will the counsel for the defendant contend that a conventional mortgage has no effect, no vitality unless and until recorded? Surely not. (C. C. 3316 and 3319; 1 An. 219.) If during the pendency of this action ten years had elapsed from the time the right under the mortgage could have been exercised, without a renewal of the inscription, and in the meantime third persons, not claiming under the party sued, had acquired rights upon the mortgaged property, I concede at once that the mortgage could not operate to their prejudice, because the effect of the first inscription would have ceased. The mortgage itself, however, would have remained unimpaired by the omission to reinscribe, as between the defendant, claiming under the mortgagor, and the mortgagee. (C. C. 3314, 3315, 3316; 2 An. 776.) We show, however, that the inscription of the mortgage was renewed on the      day of       , 185 . No action could have been brought by the plaintiff before the 19th of May, 1842. How is Art. 3333 of the Code to be construed? Does it mean, what it purports on its face, that the registry preserves the evidence of the mortgage during ten years, reckoning from the date of the mortgage? If such be the meaning of that article, it strikes at the very foundation of another principle, the propriety and justice of which had never been questioned, and which is, that prescription begins to run against a right only from the time that the right can be exercised. The mortgage under which the plaintiff claims is dated the 25th of October, 1838; the notes it secures, and which came into the possession of the plaintiff, fell due in May, 1842, and May, 1843. His right of action could only be exercised after the maturity of the first note, in 1842. Suppose, however, that the note was payable in 1849, the right under the mortgage might have been barred before it could be exercised! If this be law, I confess I do not understand the reason of the law.

*T. H. Lewis,* for defendant:

This case presents two questions:

1st. Whether the pendency of an action against the third possessor of mortgaged property will dispense the creditor from the necessity of reinscribing his mortgage? We say that his failure to reinscribe is fatal to his claims against the defendant. La. C. 3333. 2 An. R., 100, 520, 776 and 799.

2d. The plaintiffs, having suffered the notes, by which his debt is evidenced, to be prescribed, the mortgage granted to secure it is also extinguished, and cannot be enforced against a third possessor of the mortgaged property. La. C. 3505, 3030, 2157, n. 2.

Rost, J. The plaintiff has appealed from a judgment rendered against him in an action of mortgage, instituted against a third possessor, upon a note prescribed upon its face.

The first ground of error assigned, is that the principle that the accessory falls with the principal obligation only applies so long as the property mortgaged remains in the possession of the original debtor, and that when it passes into the hands of a third person having notice of the encumbrance, and against whom the hypothecary action is brought, as it was in this case, before prescription accrued upon the principal obligation, the mortgage becomes isolated from, and does not fall with it.

This distinction is in direct conflict with Art. 3252 of the Code, which provides that, in all cases where the principal debt is extinguished, the mortgage disappears with it. It also conflicts with Arts. 3249, 3494 and 3495, as expounded by our predecessors, in the case of *Shields* v. *Brundige,* 4 La. 326. The passages cited from *Grenier* and *Troplong,* have reference to the dispositions of the Code of France, which regulate the prescription of mortgages; our Code contains no such dispositions, and the rule here is without exception, that the mortgage falls with the principal obligation to which it is accessory. See *Succ. ,Linderman,* 3d Ann. 714; *Succ. of Dubreuil,* 12 Rob. 1207; *Auguste* v. *Bernard,* 3d Rob. 389.

The judgment is affirmed. with costs.