LUNT and others *v.* BOSTON MARINE INS. CO.

*(Circuit Court, S. D. New York.* ——, 1881.)

1. MARINE INSURANCE — PROMISSORY REPRESENTATION — SUBSTANTIAL COMPLIANCE.

A substantial compliance with a promissory representation is sufficient to sustain a contract for marine insurance.

2. SAME—SEAWORTHINESS—BURDEN OF PROOF.

Seaworthiness must be shown by the assured, where proof of such fact is necessary to excuse the non-compliance with a promissory representation.

3. MOTION FOR A NEW TRIAL—EXCEPTION TO INSTRUCTION—SPECIFIC OBJECTION.

The failure to specify the precise point of objection, upon a broad exception to an instruction, where the latter may very possibly have had a material influence upon the verdict, will not defeat a motion for a new trial upon the ground that such instruction was erroneous.

4. MARINE INSURANCE — PROMISSORY REPRESENTATION — SUBSTANTIAL COMPLIANCE.

The cargo of a vessel which had been pronounced unseaworthy was insured upon the representation that she was "to be repaired." Upon a new survey, however, it was found that no repairs were required, and the same were therefore not made. *Held,* that the fair construction of the representation, assuming it not to have been the statement of an expectation, but a promissory representation, was that the vessel was to be put in a seaworthy condition for her voyage before the commencement of the risk; and that, if she was in that condition when she left the port from which the cargo was insured, the representation was satisfied.

5. SAME—SEAWORTHINESS—BURDEN OF PROOF.

*Held, further,* that the fact of non-compliance with such represen-
tation imposed the burden of proving seaworthiness upon the as-
sured.—[ED.

Motion for New Trial.

*Beebe, Wilcox & Hobbs,* for plaintiffs.

*Benedict, Taft & Benedict,* for defendant.

WALLACE, D. J.  The plaintiffs having obtained a verdict,
the defendant now moves for a new trial, alleging error in
the rulings of the court on the trial.  The action is on a con-
tract for marine insurance, evidenced by a certificate, whereby
the defendant undertook to insure the plaintiffs for $3,000
on a cargo of potatoes on board the schooner Lacon "at and
from Yarmouth (Nova Scotia) to New York city."  At the
time the insurance was effected the vessel was at Shelburne,
to which port she had put in leaking and in distress.  A sur-
vey was ordered at that port, and the vessel was pronounced
unseaworthy.  By an arrangement between underwriters, who
had insured the cargo, and the plaintiffs, the insurance was
cancelled, and plaintiffs were paid $2,000.  They thereupon
applied for new insurance to agents of the defendant.  The
defendant's agents refused to insure the cargo from Shelburne,
but agreed to insure from Yarmouth, to which port the vessel
was to proceed from Shelburne.

The action was defended upon the theory that the plaintiffs
represented that the vessel should be repaired at Yarmouth,
and no repairs were made; also upon the ground of conceal-
ment and of unseaworthiness.

It was not claimed upon the trial that there was a war-
ranty in reference to the repairs, but that there was a prom-
issory representation made orally, and in the application for
insurance, that the vessel was "to be repaired at Yarmouth."
Evidence was given by the plaintiffs that upon the vessel's
arrival at Yarmouth a new survey was had, and it was found
upon examination that no repairs were required.  The court
ruled that the defence of concealment could not be predicated
upon the failure of the plaintiffs to disclose the fact of survey
at Shelburne, or the cancellation of the previous insurance,

because the law implied a warranty of seaworthiness, and the underwriter is presumed to rely upon the warranty, and the applicant for insurance need not proffer any disclosures to the prejudice of the ship's seaworthiness, and ruled that the cancellation of the outstanding insurance was a fact extrinsic to the risk. The correctness of this ruling is not contested on the present motion. The court also ruled that if, when the ship arrived at Yarmouth and was examined, it was found no repairs were needed, and no repairs were in fact necessary, but the vessel was in a seaworthy condition for her voyage, the defendant could not prevail upon the defence of a non-compliance with the representation; that the fair construction of the representation, assuming it not to have been the statement of an expectation, but a promissory representation, was that the vessel was to be put in a seaworthy condition at Yarmouth for her voyage before the commencement of the risk; and if when she left Yarmouth she was in that condition, the representation was satisfied. To this ruling there was an exception, which is now insisted on.

There was no conflict of testimony as to the terms of the representation, and no evidence of usage respecting the meaning of the language used. It was therefore the duty of the court to decide as a matter of legal construction what was the force and effect of the representation. The representation was that the vessel "was to be repaired," without specifying the character or extent of the repairs. Nothing had been stated between the parties as to what repairs should be made. In the negotiations there had been nothing mentioned regarding the condition of the ship except that she had put into Shelburne in distress, and leaking. If the particulars of her mishap had been further specified, this circumstance might have qualified and characterized the meaning of the language used. The insurers were informed in substance that the vessel was not in a seaworthy condition. This information having been given, the insurers could not rely upon the implied warranty of seaworthiness, and insisted on an assurance that she would be repaired at Yarmouth, where the risk was to commence. The plaintiffs were not

the owners of the vessel, and could not be expected to have any voice in repairing her beyond the immediate necessities of the situation. Under these circumstances the inference seems almost irresistible that such repairs were contemplated as would render her seaworthy for the voyage, and when the insurance should take effect, and that any other repairs were a matter of indifference to the parties.

I do not understand it to be contested that if the representation was properly construed it was error to rule that there was not a breach of the representation; but if this is contended, I think the defendant cannot maintain its contention. It is not necessary to refer to the strict rules which require a warranty to be fulfilled. As to representations, more liberal rules obtain.

In *De Hahn* v. *Hastley*, 1 T. R. 343, Lord Mansfield said: "A representation may be equitably and substantially answered, but a warranty must be strictly complied with." The two cases most frequently referred to in illustration of the rule are *Suckley* v. *Delafield*, 2 Caine's Rep. 222, and *Pawson* v. *Watson*, 1 Cowp. 785.

In *Suckley* v. *Delafield*, where the representation was that the ship would sail "in a few days for the West Indies, in *ballast*," it was held to mean the vessel would not be exposed to the sea perils attending a loaded ship, and was substantially performed, although the master secretly conveyed into the ship and transported a small quantity of merchandise.

In *Pawson* v. *Watson*, *supra*, the representation was that the ship was to sail with 12 guns and 20 men. She sailed with 10 guns and 6 swivels, and with 16 men and 7 boys. It was held that as the representation had not been departed from fraudulently, nor in a manner detrimental to the underwriter, the policy was in force.

The elementary writers are unanimous to the effect that it is sufficient if promissory representations are substantially complied with. Mr. Arnould states the doctrine thus: "When it appears reasonable to conclude, from the whole circumstances of the case, that the failure to comply with the strict terms of the representation has not substantially altered

the risk, such non-compliance will not discharge the underwriter's contract." Arnould on Ins. 523. If it were represented that a vessel should sail with convoy, or a certain armament, and peace be proclaimed before the voyage commenced, it would be manifestly unreasonable to exact the performance of this representation as a condition of the underwriter's liability. Duer on Representations, 89.

In Duer on Ins. 702, (Lecture 14, § 36,) it is stated: "There exists, however, in regard to representations, this necessary exception: When they cease to be material before the risk commences, by an entire alteration in the state of things that led to their being made, and from which alone they derived their value, a compliance with their terms is no longer requisite." In the present case it is to be assumed the jury found that after an examination at Yarmouth it was evident no repairs were needed, and the vessel was in a fit condition to proceed upon her voyage. This being so, it would seem too plain to doubt that neither the interests of the insurers nor the fair purport of the promise required that to be done by the plaintiffs which would have been superfluous and futile.

It is also contended that the court erred in instructing the jury that the burden of proof was upon the defendant to establish the unseaworthiness of the vessel. If this instruction had been limited to that branch of the defence which was predicated upon a breach of the implied warranty of seaworthiness, I should be disposed to adhere to it now as correct. It is everywhere conceded that in every policy of insurance on a vessel there is an implied warranty that the vessel is seaworthy, but many of the authorities declare that this warranty is a condition precedent to the obligation of insurance; and as the general rule is undoubted that the performance of a condition precedent must be pleaded and proved whenever it enters into the cause of action, the application of that rule to actions for marine insurance seems consistent, and has therefore been enforced. On the other hand, it would seem to be the reasonable presumption of fact that a ship is seaworthy, in the absence of any circumstances

indicating the contrary; and as it is quite unnecessary to make proof of facts which will be assumed to exist in the absence of proof, it has been held in many cases that the *onus* of proving unseaworthiness is on the party that alleges it. Out of this conflict of opinion the commentators have deduced still another, which has been approved by high authority, but never adjudged when necessarily under consideration in the particular case. Mr. Justice Duer, in *Moser* v. *Sun Mut. Ins. Co.* 1 Denio, 176, says the true rule deducible from a full comparison of the cases appears to be that stated by Mr. Arnould, (2 Arn. on Ins. § 447, p. 1345:) "The assured is bound to aver and prove that the ship was seaworthy when the risk commenced, but the proof to be given by him in the first instance need not be particular and full. Although slight and general, if not contradicted it is deemed sufficient, and when given it shifts the burden upon the underwriter."

Mr. Phillips, after stating that seaworthiness is said to be presumed in divers cases, says: "Whether, however, it is to be proved in the first instance by the assured, or is to be presumed, is usually of very little practical importance, since the proof required in such case is necessarily only of a general character, and may ordinarily be readily had." 1 Phil. on Ins. § 724. In the present case, where the testimony left the fact in grave doubt, the unsatisfactory character of this middle view is well illustrated. The burden was on the one side or the other to overcome a presumption, either of law or of fact, and the court was required to decide where the burden rested; and in a doubtful case like this the ruling might well be decisive with the jury. If the *onus* is shifted from the plaintiff to the defendant, when the former has given "slight and general proof" of seaworthiness, it would seem to be shifted back again when the latter has given proof which is more cogent, and thus the court would be required to determine a question of fact upon conflicting evidence before instructing the jury upon a question of law. It is a safer rule, because capable of a more certain application, to hold that the one party or the other has the *onus* of proof.

There are two cases in the federal courts which are entitled

to great consideration, because of the learning and eminence of the judges before whom they were tried, where the question was directly considered, and instructions to the jury were delivered; but, unfortunately, they are in direct antagonism. Mr. Justice Story, in *Tedmarsh* v. *Wash. Ins. Co.* 4 Mason, 440, instructed the jury that the burden of proof to establish seaworthiness was upon the assured, while Mr. Justice Curtis, sitting in the same circuit, in the later case of *Bullard* v. *Roger Williams Ins. Co.* 1 Curtis 148, instructed the jury that the burden of proof was upon the insurer. The English cases favor the conclusion that seaworthiness is assumed as a fact, in the absence of countervailing facts, and therefore that the assured is entitled to the benefit of the presumption. *Watson* v. *Clark*, 1 Dow, 336; *Parker* v. *Potts*, 3 Dow, 23. And in the recent case of *Peckup* v. *Thames Ins. Co.*, decided by the high court of appeals in 1878, (L. R. 3 Q. B. Div. 594,) all the judges agree that the presumption of law is *prima facie* in favor of seaworthiness, and the burden of proof to the contrary is on the insurer. That was an action on a policy, and it was proved on the trial that the vessel put back from inability to proceed 11 days after she started on her voyage. The judge directed the jury that this circumstance was sufficient to shift the *onus* of proof from the underwriter, and make it incumbent on the assured to prove that the unseaworthiness arose from causes occuring subsequently to setting sail. This was held to be error, all the judges agreeing that the presumption is *prima facie* in favor of seaworthiness, and the burden of proof to show the contrary upon the insurer. The same conclusion is sanctioned by the weight of authority in our own courts. *Taylor* v. *Lowell*, 3 Mass. 347; *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227; *Myers* v. *Girard Ins. Co.* 26 Pa. 192; *Snethen* v. *Memphis Ins. Co.* 3 La. Ann. 474.

In the present case, however, the jury were instructed that the burden of proof was upon the defendant to show unseaworthiness when it appeared that the plaintiffs had represented that the vessel should be repaired at Yarmouth, and no repairs had in fact been made. It thus appeared there

had not been a compliance with the representation, and it then devolved upon the plaintiffs to excuse their non-compliance. This they attempted to do by proof that the vessel was seaworthy and needed no repairs. The plaintiffs held the affirmative as to this. The instruction imposed the affirmative upon the defendant. The manifest tendency of the instruction was to mislead the jury. Had my attention been specifically directed on the trial to the point now made, the instruction would have been limited to the issue arising upon the implied warranty of seaworthiness. As it was, a broad exception was taken to the instruction, which would probably be unavailing upon a bill of exceptions for failure to specify the precise point of objection. But on a motion for a new trial, and when the misdirection may very possibly have had a material influence upon the result, a technical criticism of the exception is out of place.

The motion for a new trial is granted.