CARLOS MERINO, SUCCESSOR OF RAFAEL SEIJO CASALDERE, Plaintiff and Appellee, *v.* GLOBE RUTGERS FIRE INSURANCE COMPANY, Defendant and Appellant.

No. 3785. Argued March 11, 1926.—Decided April 29, 1926.

*Jaime Sifre, Jr.,* and *Horacio Franceschi* for the appellant.  *Antonsanti & La Costa* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action to recover on a certain insurance policy. After trial the district court rendered judgment on March 23, 1923, dismissing the complaint with costs. On September 5, 1923, the plaintiff moved the court, under section 140 of the Code of Civil Procedure, to be relieved of the effects of the judgment. The motion was overruled. The plaintiff appealed to this court (33 P.R.R. 406) and the judgment of the district court was reversed, whereupon a new trial was had and the judgment rendered was favorable to the plaintiff. The defendant then took this appeal. Its assignment of error is as follows.

"I.—The court committed manifest error in weighing the evidence and finding that plaintiff Carlos Merino was the owner of the schooner insured by the defendant, and that the policy issued by the defendant had been transferred and assigned to said plaintiff.

"II.—The court erred in sustaining the complaint because the plaintiff did not establish the existence of any legal connection between him and the defendant by which the latter should be bound to pay anything to him.

"III.—The court committed manifest error in holding that the insured schooner was seaworthy on her last voyage, during which she was lost.

"IV.—The court committed manifest error in finding that the sinking of the schooner was due to a peril of the sea.

"V.—The court committed error in sustaining the complaint, inasmuch as it was not proved that the sinking of the schooner was due to one of the risks covered by the policy issued by the defendant.

"VI.—The court committed error in overruling the demurrer for lack of cause of action on the ground that the complaint did not aver facts sufficient to constitute a cause of action."

As regards the question raised in the first assignment of error, we have read carefully the long and intelligent

argument of counsel for the defendant-appellant and the fact is that it is inconceivable why in such a case as this the plaintiff, having available conclusive documentary evidence, failed to present it, thereby running the risk of again losing his alleged rights without enabling the court to examine its merits.

It may be said, however, that after a careful study of the pleadings, the evidence, the law and the jurisprudence, by putting the details together and considering the defendant's attitude during the course of the litigation, the conclusion is reached that the trial court was right in finding:

"That in the month of April of the year 1921 said Seijo sold the insured schooner to plaintiff Carlos Merino, delivering to him through his attorney in fact the policy issued by the defendant."

In the third count of the verified amended complaint it is alleged that Seijo sold to the plaintiff the schooner in question, and in the fifth that the plaintiff gave notice of the accident to the defendant. And in answering that count the defendant alleges "that on April 1, 1921, Sobrinos de Ezquiaga wrote to Despard & Co., insurance agents, asking that a new policy be issued by the defendant herein in the name of the plaintiff herein upon the expiration of the said policy issued in the name of Rafael Seijo Casaldere; that the defendant, neither on April 1, 1921, nor on any other date, issued any policy of insurance in favor of the plaintiff herein on the schooner María Magdalena, and, on information and belief, that according to the terms of said policy of insurance Rafael Seijo Casaldere could not sell, transfer or assign the schooner or the policy of insurance without the previous consent in writing of the defendant, which consent was never given." And in answering the fifth count it was admitted "that the plaintiff gave notice of the accident to Sobrinos de Ezquiaga who, acting as agents of the plaintiff herein, gave notice of the sinking of the said schooner María Magdalena to Despard & Co., New York insurance brokers, and that both

Sobrinos de Ezquiaga and Despard & Co. notified the defendant herein of the sinking of the said schooner, supplying the information and documents usually required in such cases.''

One of the documents introduced in evidence at the trial was a copy certified to by the Deputy Collector of Customs of San Juan, P. R., of the ''Report of Casualty'' filed in the custom house according to the Act of June 20, 1874, wherein it was stated that the plaintiff was the owner of the schooner herein involved.

Finally Gabriel Palerm, attorney in fact first of Seijo and then of Merino and manager of the schooner for account of both, repeatedly testified that the schooner was sold by Seijo to Merino, concluding his testimony by replying to the defendant's questions as follows: ''Q. How was that sale made?—A. As every sale is made, with money.—Q. Was there a bill of sale?—A. They are nothing but transfers made in the custom house.'' And in regard to the assignment of the policy, although Palerm insisted that the policy was not transferred, it is evident that he referred to the document representing the policy. He took steps to have a new policy issued by the company in favor of Merino, and to show that the policy was not transferred he said that it was ''because the term of the insurance had not expired and the policy could not be transferred,'' and immediately answering the following question put to him by defendant's counsel: ''Seijo never assigned the policies to Carlos Merino?'' he said: ''He always gave to Carlos Merino the insurance of everything, but the policies could not be transferred because the term had not expired.'' Another part of Palerm's testimony is as follows: ''Q. During the transfer of these policies to whom was the policy of this case delivered when Merino purchased the schooner?—A. When Merino purchased the policies always remained in my hands.—Q. As attorney in fact of whom?—A. Carlos Merino.'' And the acts of the

witness with Sobrinos de Ezquiaga and the defendant before and after the accident are consistent only with the sale of the schooner and the transfer of the policy to Merino.

Witness Palerm deserved full credit by the court and the objections urged against him by the appellant in its brief do not convince us that the district court abused its discretion.

By the parts of the record which we have indicated and others which have perhaps escaped the written statement of the case, without losing sight of what is provided in section 4192 of the Federal Statutes and in section 573 of the Code of Commerce, cited by the appellant at the hearing and in its additional brief, we are of the opinion that the first assignment of error is without merit.

The second assignment of error raises the most interesting question involved in this suit. The policy was issued in favor of Rafael Seijo Casaldere "on account of whom it may concern" and contains besides a clause that reads: "It is also agreed that this insurance shall be void in case this policy or the interest insured shall be sold, as-signed, transferred, or pledged without the previous consent in writing of the insurers."

It is an admitted fact that the consent of the defendant to the sale of the schooner and the assignment of the policy was not obtained, nor even asked for. The facts were brought to the attention of the defendant and a new policy in favor of the plaintiff was sought without result. That was all.

Such being the case, if the last clause quoted were applied it would not be necessary to search for any jurisprudence in order to conclude that under the contract, which is the law between the contracting parties, Merino, the plaintiff, had no right.

However, the policy contains not only the restrictive clause quoted, but also the words "on account of whom it may concern," as before stated, together with the fact that

"on account of" is printed and followed by a blank space which seems to have been filled by a rubber stamp with the other words "whom it may concern," while the restrictive clause is one of the many clauses printed in the body of the policy in very small type, and under similar circumstances such words have been construed in the sense that the policy secures the right of a subsequent purchaser although the transfer was not made with the consent of the insurer.

On November 11, 1899, Judge McPherson of the United States District Court, E. D. of Pennsylvania, held in the case of *Hagan* v. *Scottish & National Ins. Co.* as follows:

"In December, 1897, Peter Hagan, who was then the sole owner of the tugboat Senator Penrose, took out a fire policy for one year in the respondent company, insuring Peter Hagan & Co., 'for account of whom it may concern, to an amount not exceeding $2,000, on the iron tug Senator Penrose, her hull, tackle, apparel, engines, boilers, machinery, appurtenances, furniture, and supplies.' Among the printed provisions of the policy, it is declared that the contract shall be void 'if the interest of the insured be other than unconditional and sole owership,' or 'if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance, . . . whether by legal process or judgment, or by voluntary act of the insured or otherwise, or if this policy be assigned before a loss.' In June, 1898, Hagan sold a half interest in the tug to Martin, but did not notify the company of the sale, or obtain its consent thereto. There was some discussion between Hagan and Martin concerning the effect of the sale upon the policy, and they took the advice of an insurance broker upon the subject, coming finally to the conclusion that the clause, 'for whom it may concern,' was sufficient to protect the interest of Martin without further action. The sale included a half interest in the policy, and Martin accounted to Hagan for the proper share of the premium for the unexpired term. In the month of July the boat was destroyed by fire. Proofs of loss were made, but the company refused to pay, upon the ground that, under the foregoing provisions of the policy, the sale to Martin had made the contract void.

"The decision of the case depends upon the effect to be given to the words, 'for whom it may concern.' This clause, so far as it may be in conflict with other language in the policy, must, upon familiar principles, be regarded as dominant. It expresses the special agree-

ment of the parties, for it is in writing, while the conflicting provisions are in print, and general printed conditions usually give way to deliberately chosen written words. Moreover, even if the court doubted which provision should prevail, another well-known rule requires the policy to be construed against the company rather than against the insured; and therefore, upon either ground, the clause now under consideration is controlling.

"The effect to be given to it seems to be well settled. The supreme court, in Hooper v. Robinson, 98 U. S. 528, 25 L. Ed. 219, states it in this language:

" 'A policy like the one here in question in the name of a specified party, "on account of whom it may concern," or with other equivalent terms, will be applied to the interest of the persons for whom it was intended by the person who ordered it, provided the latter had the requisite authority from the former, or they subsequently adopted it. 1 Phil. Ins. sec. 383.

" 'This is the result, though those so intended are not known to the broker who procures the policy, or to the underwriters who are bound by it. Id. sec. 384.

" 'One may become a party to an insurance effected in terms applicable to his interest, without previous authority from him, by adopting it either before or after the loss has taken place, though the loss may have happened before the insurance was made. Id. sec. 388.

" 'The adoption of the policy need not be in any particular form. Anything which clearly evinces such purpose is sufficient.'

"The first step, therefore, in a given case, is to determine what interest the person taking out the policy intended to protect. It is not essential that he should have had any specific individual in mind. It is enough if he intended to protect the interest that afterwards passed to the person injured; and, if he so intended, the policy may be adopted afterwards by a subsequent sole or partial owner of the interest, although such owner may have been unknown to the person taking out the insurance, or to the company, at the time the policy was written.

"In the present case, I have no doubt (and I find the fact to be) that Hagan intended to insure, and to keep insured for one year, the entire title to the boat. He did not intend merely to protect such interest as he himself might have from time to time. If this had been his object, the policy would more naturally have been taken out in his own name, omitting the qualifying phrase. But he intended to protect the ownership of the boat, whether vested in himself alone, or shared with, or transferred to, other persons. This

being his intention, and Martin having afterwards adopted the policy by the agreement of sale and by accounting for a proper share of the premium, I think no further difficulty exists. The facts bring the dispute within the rule laid down in Hooper v. Robinson, and in other cases, to which reference need not be made. In Mosser v. Donaldson (Pa. Sup.) 10 Atl. 766, cited by the respondent, it clearly appeared that the parties intended that two persons only should have the benefit of a similar phrase, and this is the ground upon which a third person was denied the right to share in its protection. I do not think that the decision of the Maryland court of appeals in Fire Ins. Ass'n v. Merchants' & Miners' Transp. Co. (Md.) 7 Atl. 905, is in conflict with the rule stated by the supreme court of the United States, but, if there is a conflict, my duty is plain.

"A decree will be entered in favor of the libelant for $1,533.33, with interest from October 8, 1898, and costs." *Hagan* v. *Scottish Union & National Ins. Co.*, 98 Fed. 129–31.

The decree of the district court was appealed from and reversed by the circuit court. The case was then taken to the Supreme Court of the United States which reversed the decision of the circuit court and left standing that of the district court. The opinion was written by Judge Peckham. After quoting a part of the opinion of the district court and then part of that of the circuit court, he said:

"In these two extracts from the opinions delivered in the courts below we find the different views of the judges of those courts upon the question at issue. It is to be observed, in the first place, that the policy in question covers property on the water, viz., a tug boat, yet the printed portion of the policy shows that it was intended generally to be used for insuring property on land. A marine policy was made out upon blanks not intended for that kind of insurance. Consequently many of the printed provisions were wholly inapplicable to insurance of property on the water.

"Where a marine policy is thus taken out upon a blank policy providing by many of its terms for insurance on property or goods on land, it becomes doubly important to keep, and apply with strictness, the rule that the written shall prevail over the printed portion of a policy, as in such case the written, even more clearly than usual, will evidence the real contract between the parties. Courts will not endeavor to limit what would otherwise be the meaning and effect of the written language, by resorting to some printed provision in

the policy which, if applied, would change such meaning and render the written portion substantially useless and without application.

"In *Dudgeon* v. *Pembroke*, decided in the English House of Lords, in 1877, 2 App. Cas. 284, at 293, in speaking of this question of the difference between the written and the printed portions of a policy, and in delivering the opinion of the court, Lord Penzance said:

" 'My lords, the policy in this case is a time and not a voyage policy, and not only so, but an ordinary time policy. There can, I apprehend, be no doubt upon that point. It has been suggested that, by reason of the policy having been drawn up on a printed form, the printed terms of which are applicable to a voyage and also to goods as well as to the ship, the policy is something less, or something more, than a time policy. But the practice of mercantile men of writing into their printed forms the particular terms by which they desire to describe, and limit the risk intended to be insured against, without striking out the printed words which may be applicable to a larger or different contract, is too well known, and has been too constantly recognized in courts of law to permit of any such conclusion.'

"This rule is recognized and assented to by both courts below. If there be any inconsistency between the written provision of the policy and the printed portions thereof, the written language must prevail. It becomes necessary, therefore, to determine what is the meaning of the written portion of the policy, and what was intended by the parties by the language 'on acount of whom it may concern.' Both courts below concur in the statement that a policy so worded will cover the interest of the person for whom it was intended by the party taking out the insurance, even though the particular person intended was not then known. It was said in the District Court that it was enough if the person taking out the insurance intended to protect the interest that afterwards passed to the person injured; that it was not essential that he should have had any specific individual in mind at the time when he took out the insurance. The opinion of the Court of Appeals concedes that a policy in the name of a special party, 'on account of whom it may concern,' will cover the interest of the person for whom it was intended by the party who ordered it, although the particular person intended was not known. But the Court of Appeals was unable to discover anything in the case to support a finding that Hagan (the person taking out the insurance) intended to insure a subsequent vendee of the boat or of an interest therein, because of the retention in the policy of

the printed provision that it should be entirely void, unless otherwise provided by agreement, if any change in the interest, title or possession should be made. The retention of this printed provision, the court said, precluded the inference of any intent to make the policy applicable to any person claiming under or by virtue of such transfer.

"We concur in the view that by virtue of the language contained in the policy, 'on account of whom it may concern,' it is not necessary that the person who takes out such a policy should have at that time any specific individual in mind. If he intended the policy should cover the interest of any person to whom he might sell the entire or any part of the interest insured, that would be enough. In *Hooper* v. *Robinson*, 98 U. S. 528, it was said that a policy upon a cargo in the name of A, on account of whom it may concern, will inure to the interest of the party for whom it was intended by A, provided he at the time of effecting the insurance had the requisite authority from such party or the latter subsequently adopted it. The facts in that case differ materially from those presented by this record, but the meaning of the language 'on account of whom it may concern' is stated in the opinion of the court, and authorities are therein cited which show that it is not necessary that at the time of effecting the insurance the person taking it out should intend it for the benefit of some then known and particular individual, but that it would cover the case of one having an insurable interest at the time of the happening of the loss, and who was intended to be protected at the time the party took out the insurance.

*     *     *     *     *     *     *

"We are constrained to differ from the conclusion arrived at by the Circuit Court of Appeals in its statement that there was nothing in the case to support a finding that Hagan intended to insure a subsequent vendee of the boat, or of an interest therein, because of the retention in the policy of the provision that it should be entirely void, unless otherwise provided by agreement, if any change, etc., should be made. It seems to us that the very purpose of stating that the insurance was on account of whom it may concern was to do away with the printed provisions in regard to the sole ownership and to the change of interest. It was an agreement 'otherwise provided,' than in the printed portion of the policy. It provided for the happening of a contingency by which at the time of the loss the person taking out the insurance might not be the sole and unconditional owner of the thing insured because of a change in the interest or title happening by the act of such person between the time of

taking out the insurance and the occurrence of the loss. This, we think, was the intention of the party taking the insurance, to be arrived at by reading the written language of the policy and by reference to the fact that he intended to insure the whole title, and not his mere interest therein from time to time. Otherwise we do not see what effect is given to the written portion of the instrument.

   \*       \*       \*       \*       \*       \*       \*

"At the time when Hagan took out the policy he was sole owner, and unless he intended the written words to apply to those to whom he might afterwards assign his interest or some portion thereof, the language would seem to fill no purpose.

"If the policy were to become void in case of a transfer of all or any part of the interest of the person taking out the insurance unless the company were notified and provided by agreement endorsed on the policy for such change, we do not see that any alteration in its terms and meaning was accomplished by the insertion of the phrase in question. By the interpretation contended for by the company it would have the same right, if the written provision were contained therein, to refuse to otherwise provide by agreement for the transfer of an interest, that it would have if such provision were stricken out, and the terms of the policy would in truth be unaltered by the insertion of that provision. We think this would be a totally different result from that contemplated by the parties. The words 'on account of whom it may concern' do not refer to those interested in the policy simply at the time it is taken out. The terms refer to the future. It is not a question of the persons concerned when it is taken out, but of those who may be concerned when the loss may occur, and who were within the contemplation of him who took out the insurance at the time that he did so. It is on account of those who in the future, at the time of the happening of a loss, have the insurable interest and in regard to whom the policy will be applied. We think this the common sense interpretation of the language used and that it is justified and required by the authorities, many of which are cited in *Hooper* v. *Robinson, supra.*" *Hagan* v. *Scottish Ins. Co.,* 186 U. S. 428–33.

In its brief the appellant argues that the *Hagan Case* is different from this because in that case a printed form prepared for insurance on land was used and here the printed form was prepared specially for maritime insurance.

If the language of the Supreme Court is observed it will be seen that emphasis is given to such circumstance in order

to conclude that it is of double importance for a strict application of the rule, but it does not mean that the rule is based on the said circumstance.

The reason is that the printed forms are prepared beforehand to cover every case, while the words especially ·written or put in the policy at the time of executing the contract must be and are predominant because they express the actual will of the contracting parties.

In insisting to distinguish the *Hagan Case* the appellant argues also that from the facts of that case it appears that when Hagan took the insurance he had no particular person in mind, while the evidence in this case showed that Palerm obtained the insurance in Seijo's name to secure himself for a certain mortgage which he had on the schooner.

It should be explained that the evidence shows that Palerm was in fact the owner of a mortgage created on the schooner by Seijo, but it also shows that when Seijo sold it to Merino Palerm collected his credit, and there is nothing in it showing that the policy was taken to secure exclusively the credit of Palerm. It may be admitted that when Seijo insured his schooner he had in mind to secure his debt to Palerm, but that in no way excludes the idea of securing in the future any other subsequent contract.

The cases and authorities cited by the appellant do not overcome in any way the jurisprudence established by the nation's Supreme Court. And applying that jurisprudence it is also necessary to conclude that the district court did not err in holding ''that Rafael Seijo Casaldere, at the time of selling to Carlos Merino the schooner 'María Magdalena' and of delivering to him the policy of insurance that covered the same, was in no way bound to ask or obtain the consent of the defendant company to make that transfer and that he could make the sale without the contract of insurance being thereby annulled.''

■■ Assignments 3, 4 and 5 may be studied together.

Among others, the district court found the following facts:

"That some time in the month of April, 1921, and within the period covered by the policy, the schooner sailed from the port of San Juan to that of Aguadilla and from the latter to that of Mayagüez, and that on or about April 28th of the same year and at night the schooner left the port of Mayagüez bound for Santo Domingo.

"That before leaving the port of Mayagüez, as well as the other ports mentioned, the pumps were tried as usual and showed that the vessel contained no water. The sea was smooth, there was some sea current and a light wind was blowing. When the schooner was crossing the channel the crew felt a shock against one of the sides of the schooner as if caused by a piece of wood or other object which the sea currents in those places sometimes carry, and the captain and members of the crew held lights over the side of the schooner to find out what caused the jar, but saw nothing.

"That on the morning of May 29th (sic), 1921, and some thirty miles from the coast of Porto Rico the helmsman of the schooner noticed that the vessel was filling with water and called the attention of the captain and members of the crew. It was noticed that the schooner contained from 4 to 6 feet of water and the two pumps of the vessel were immediately put to work. That so much water was entering and so rapidly that the two pumps were not sufficient to overcome it and in the afternoon of April 29th, 1925 (sic), the crew had to abandon the schooner, which foundered a few moments later.

"That the whole crew reached the port of Aguadilla in a small boat and made the protest which is usual in such cases..

"That the schooner 'María Magdalena' was new, having been in service for about a year, and that a few weeks before starting on this voyage it was given a general inspection and its hull was scraped and painted anew, the vessel being found in good condition.

"That in the place where the schooner was at the time the shock was felt are frequently found logs of wood and other objects which may damage a vessel if she collides with them, and that even with a smooth sea and moderate wind, due to the currents that exist in those places, a collision of an object with a vessel as in the present case may tear a hole, as we are convinced it did, in one of the sides of the schooner."

We have analyzed the evidence examined and in our opinion it sustains the findings of the trial judge. There is

not the slightest trace of fraud. It was a comparatively new vessel and all the usual precautions were taken. The fact on which the appellant insists so much that the sand that the schooner was carrying as ballast obstructed the working of the pumps does not mean that the sinking was due to the sand. To go to sea with that kind of ballast was not prohibited and the pumps were used to their capacity. It is not required that the pumps should always be free of any obstacle that may be caused by the ballast or the cargo.

As the appellee shows in his brief, the facts of this case are different from those of *Pacific Coast S. S. Co.* v. *Bancroft Whitney Co.,* 94 Fed. 180. Here there was direct evidence, all that could be presented (inasmuch as it is not possible to require that every time a schooner expects to sail on a voyage it must be inspected by a naval engineer without omitting the smallest space), proving that the vessel was in good condition. It had just received general repairs. It had gone without difficulty from San Juan to Aguadilla and Mayagüez and before leaving for Santo Domingo it was inspected by the crew in the usually accepted way. The sinking occurred some thirty miles from the coast and the probable cause of it, which arose after the schooner had set sail, is satisfactorily explained by the evidence.

Besides, the defendant offered no evidence to show that the schooner was not in good condition when she sailed for Santo Domingo, while it has been repeatedly held that—

"The burden of proving that a vessel is unseaworthy lies upon the insurance company. The presumption of law is that every vessel is seaworthy until the contrary is proved. Gow on Marine Insurance, p. 273; Arnould on Marine Insurance, par. 725; Adderly v. American Mut. Ins. Co., Fed. Cas. No. 75; Bullard v. Roger Williams Insurance Co., Fed. Cas. No. 2122; Lunt v. Boston Marine Insurance Co. (C. C.) 6 Fed. 562; Moores v. Louisville Underwriters (C. C.) 14 Fed. 226; Guy v. Citizens' Mutual Insurance Co. (D. C.) 30 Fed. 695; Earnmoor v. California Insurance Co. (D. C.) 40 Fed. 847; Nome Beach Lighterage & Transp. Co. v. Munich Assur. Co. (C. C.) 123 Fed. 820, 824; Thames & Mersey M. Insurance Co. v.

Pacific Creosoting Co., 223 Fed. 561, 570, 139 C. C. A. 101." *Fireman's Fund Ins. Co.* v. *Globe Nav. Co.,* 236 Fed. 618, 623.

In our opinion the evidence shows also that the accident was due to a peril of the sea covered by the policy.

There is abundant jurisprudence touching the matter and much of it is cited by the parties. The policy contains these words: "Touching the adventure and perils which the said company is contented to bear, and take upon itself, in this voyage, they are of the Seas, Fire, . . ." And as there is no doubt that the sea has currents and that those currents carry trunks of trees which overflowing rivers take into the sea, one of the risks that vessels run is not to see those trunks of trees and to collide with them without any negligence on the part of those having control of the vessels, and in vessels of the kind involved in this case the collision may immediately or afterwards open a seam of such a nature that the amount of water entering thereby is so great that it causes the sinking of the vessel without its being possible to prevent it by the use of the pumps to their full capacity and by the efforts of the whole crew. And the evidence shows that that was what happened in this case.

It remains to consider only the error alleged to have been committed by the court in overruling the demurrer to the complaint filed by the defendant and submitted without argument.

It is argued by the appellant that the complaint does not state a cause of action because it does not allege that the policy was in force at the time of the disaster. The appellee answers that the specific averment, the lack of which is noticed by the appellant, was made in the original complaint filed in the district court, but that even admitting that it was not, it was not necessary because from the general context of the complaint it is deduced that the insurance was in force on the date of the accident, and thus in effect is the result of the study that we have made of the complaint.

And the appellant argues lastly that from the complaint as drafted it can not be deduced that the sinking of the schooner was due to one of the perils of the sea secured by the policy. In the complaint it is alleged that "while the said schooner was some 30 miles from the coast of Porto Rico the captain discovered an opening in the hull of the vessel, the water that entered thereby being so much that the pumps which were put to work were not sufficient to overcome it, as a result of which the said schooner sank in spite of all the efforts of the crew to save her; but that notwithstanding the work performed by them during the whole day, about four o'clock in the afternoon of said day the crew had to abandon the schooner because it was impossible to save her as she was sinking rapidly, the occurrence being accidental, without any fault on the part of the captain or of the crew and without negligence or lack of experience of the crew or the captain."

Although the cause of the opening was not specified in the complaint, we are of the opinion that, all of the circumstances considered, that was not absolutely necessary. It may be said that the complaint was not as perfect as it should have been, but there was a basis in it, and all that was lacking was supplied by the evidence examined without objection.

For the foregoing reasons the judgment appealed from must be affirmed.